**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 20 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 96-3062

FRANCHIE D. WILSON,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CR-10042)

Lanny D. Welch (Jackie N. Williams, United States Attorney, with him on the brief),
Assistant United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

T. Lynn Ward, Hershberger, Patterson, Jones and Roth, P.C., Wichita, Kansas, for
Defendant-Appellant.

Before SEYMOUR, PORFILIO, and HENRY, Circuit Judges.

HENRY, Circuit Judge.

A jury convicted defendant-appellant Franchie D. Wilson on three counts of possession of a firearm or ammunition by a convicted felon in violation of 18 U.S.C. § 922(g); one count of possession with intent to distribute, or aiding or abetting the distribution of, approximately five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2; and one count of unlawfully carrying or using, or aiding or abetting the carrying or using of, a firearm in relation to a drug-trafficking crime in violation of 18 U.S.C. §§ 2, 924(c). After the district court vacated Mr. Wilson's conviction for carrying or using a firearm in relation to a drug-trafficking crime, it sentenced Mr. Wilson to 108 months imprisonment on each of the remaining counts to run concurrently. Mr. Wilson appeals his conviction on the basis that (1) there was insufficient evidence by which the jury could convict him on the remaining counts; (2) the district court erred by allowing hearsay testimony regarding the events surrounding a "controlled buy" by a confidential informant; and (3) the district court erred in allowing testimony regarding Mr. Wilson's prior acts and criminal conviction. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. BACKGROUND

Two relevant incidents preceded the events that gave rise to Mr. Wilson's indictment. First, on July 23, 1994, Wichita police officer Gores stopped a vehicle

driven by Mr. Wilson. In the course of arresting Mr. Wilson for driving with a suspended license, Officer Gores found cocaine and marijuana on his person. Mr. Wilson was subsequently convicted of, among other things, felony possession of cocaine.

Second, on March 18, 1995, Mr. Wilson was a passenger in a vehicle driven by Quintina Mannie in which Wichita police officer Easter found a .38 caliber handgun after arresting Mr. Wilson on an outstanding felony warrant. In responding to a charge for possession of the handgun, Ms. Mannie testified that the handgun belonged to Mr. Wilson and that he hid it when the police pulled them over. No charges were ever filed against Mr. Wilson for possession of the handgun.

The more immediate set of events relevant to the present appeal began in March 1995, when Wichita police officers investigated a residence at 2026 North Green for possible drug dealing. On March 23, 1995, Officer Easter used a confidential informant to make a "controlled buy" of cocaine from the residence using marked currency. Officer Easter watched the transaction in which Mr. Wilson met the informant and then-- out of the sight of Officer Easter--went into the house together, where the informant purchased approximately one-half gram of crack cocaine which was then turned over to Officer Easter. Based on this "controlled buy," Officer Easter obtained a search warrant for 2026 North Green.

3

On March 25, 1995, several police officers under Officer Easter's command executed the search warrant on 2026 North Green. As the police officers approached the residence, Mr. Wilson met them at the front door. When the officers informed Mr. Wilson of the search warrant, he slammed the door shut, ran toward the kitchen, and entered the first-floor bedroom, where he was apprehended by the officers. There was a loaded SKS assault rifle found propped up against the door frame near where Mr. Wilson was placed under arrest.

Upon searching Mr. Wilson, the police found a pager and $359.00 in currency-- none of which matched the money used in the controlled buy. The search of the premises uncovered: (1) 17-20 "rocks" of crack cocaine (3.74 grams in total) in a six-pack Dial soap box found in a brown paper bag in the yard near the porch; (2) a glass tray and razor blade containing cocaine residue and Mr. Wilson's fingerprint which were found in a closet; (3) five bars of Dial soap in the same closet; (4) a cartridge container of .38 caliber bullets in the kitchen; and (5) a second SKS assault rifle in the upstairs bedroom. Mr. Wilson's personal effects were also located in the upstairs bedroom and included two letters and several legal documents with Mr. Wilson's name, photographs which included Mr. Wilson, and six pairs of shoes matching Mr. Wilson's size. There was no evidence found indicating that any other person inhabited the residence.

Detective Fettke testified that, while being booked into jail, Mr. Wilson questioned how he could be charged for possessing a firearm when he did not have any

guns on his person. According to Detective Fettke, Mr. Wilson then told him "that I [Detective Fettke] was a pussy funk and that he [Mr. Wilson] had beat me again, and that he didn't have the guns or dope on him this time and had beat me again."

Based upon this evidence, Mr. Wilson was indicted and convicted on: (1) three counts of possession of a firearm or ammunition--i.e., the two SKS assault rifles and the .38 caliber ammunition--by a convicted felon; (2) one count of possession with intent to distribute, or aiding or abetting the distribution of, approximately five grams of cocaine; and (3) one count of unlawfully carrying or using a firearm in relation to a drug-trafficking crime. At sentencing, the district court vacated the conviction for carrying or using a firearm in relation to a drug-trafficking crime and sentenced Mr. Wilson to 108 months imprisonment on each of the four remaining counts to run concurrently.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Mr. Wilson contends the evidence was insufficient to support the jury's finding that he possessed cocaine with intent to distribute and that he was a felon in possession of a firearm or ammunition. We review the record for sufficiency of the evidence de novo. United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994). "Evidence is sufficient to support a conviction if a reasonable jury could find the

defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." United States. v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994). Rather than examining the evidence in "bits and pieces," we evaluate the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986). Thus, we must affirm the convictions if the "collective inferences" from the totality of that evidence could have led a reasonable jury to find beyond a reasonable doubt that Mr. Wilson possessed the requisite knowledge and intent for the underlying crimes. United States v. Johnson, 57 F.3d 968, 971 (10th Cir. 1995). We address Mr. Wilson's arguments in turn.

### 1. Possession with intent to distribute cocaine

To obtain a conviction for possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1), the government had to prove that Mr. Wilson (1) possessed a controlled substance; (2) knew he possessed a controlled substance; and (3) intended to distribute the controlled substance. Mains, 33 F.3d at 1228. Mr. Wilson contends the evidence was insufficient to support his conviction under § 841(a)(1). Specifically, he argues that there was insufficient evidence to connect him with the house and the cocaine found in the yard. He also argues that there was insufficient evidence to establish his alleged intent to distribute the 3.74 grams of cocaine base.

In reviewing the evidence in the light most favorable to the government, we find that the combination of the various pieces of evidence provides sufficient grounds for a reasonable jury to conclude that Mr. Wilson possessed the cocaine base found in the yard. The possession of a controlled substance may be either actual or constructive. Constructive possession occurs when a person "knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992). While constructive possession may be demonstrated through circumstantial evidence, the government must show "a sufficient nexus between the defendant and the narcotics." Id.

The circumstantial evidence found in the home suggests that Mr. Wilson exercised sole dominion and control over the premises and can be used to infer that he possessed the cocaine found in the Dial soap box in the yard. Even though there is no direct evidence that Mr. Wilson owned or rented the house at 2026 North Green, the circumstantial evidence demonstrates that Mr. Wilson was the only person living at the residence at the time of the search. The police found Mr. Wilson's personal belongings in an upstairs bedroom: letters and documents with Mr. Wilson's name, personal photos which included Mr. Wilson, and shoes matching Mr. Wilson's size. The police also noted that no other personal effects were found in the house. Nor was there evidence (ie., crack pipes, alcohol, steel wool, or cotton swaps) to indicate that the house served as a transient crack house. Mr. Wilson is further connected to the house and the cocaine

through the glass tray and razor blade containing cocaine residue and his fingerprint. Finally, the 3.74 grams of cocaine base were in a Dial soap six-pack box, and there were six bars of Dial soap found inside the house--five of which were in the same closet as the glass tray with Mr. Wilson's fingerprint. This evidence, taken together, creates a sufficient nexus between Mr. Wilson and the cocaine found in the yard to establish that he had "dominion or control" over the 3.74 grams of cocaine.

The government also provided sufficient evidence of Mr. Wilson's intent to distribute the cocaine found in the yard. The intent to distribute, or aid or abet in distributing, cocaine could be inferred from Officer Easter's description of the events surrounding the "controlled buy." While Officer Easter did not actually observe Mr. Wilson sell the cocaine to the confidential informant, he did observe Mr. Wilson greet the informant in the yard and lead him into the house where the purchase occurred. The evidence also demonstrates that the police found $359.00 on Mr. Wilson's person and a pager--both probative of cocaine distribution given that Mr. Wilson was unemployed at the time. Furthermore, the cocaine base found in the yard consisted of between 17 and 20 "rocks"--indicative, according to the testimony of Officer Easter, of distribution as opposed to personal use. The government also introduced statements Mr. Wilson made while being booked--that he had "beat" the officer because he did not have the guns or crack on his person, a statement tending to demonstrate that Mr. Wilson understood drug trade and distribution. This court has also indicated that the presence of a firearm in

connection with drugs, as with the two assault rifles in this case, may be probative evidence of an intent to distribute the drugs. Hager, 969 F.2d at 888 (citing United States v. Bruce, 939 F.2d 1053, 1056 (D.C. Cir. 1991)). Taken as a whole, the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Mr. Wilson possessed the 3.74 grams of cocaine base with the intent to distribute, or aid or abet distribution of, that cocaine.

## 2. Felon in possession of firearms and ammunition

To obtain a conviction under 18 U.S.C. § 922(g)(1) for possession by a felon of a firearm or ammunition, the government had to prove (1) Mr. Wilson was convicted of a felony; (2) he thereafter knowingly possessed a firearm and/or ammunition; and (3) the possession was in or affecting interstate commerce. United States v. Shunk, 881 F.2d 917, 921 (10th Cir. 1989). Mr. Wilson focuses his challenge on the second element--that is, that there was insufficient evidence that he "knowingly possessed" the firearms and ammunition. Mr. Wilson alleges that the government failed to provide direct evidence, such as fingerprints from either weapon or his actual physical control over either weapon or the ammunition when the search was conducted.

"Constructive possession"--again ownership, dominion, or control-- is sufficient for a conviction under § 922 (g)(1); proof of actual possession is not required. See United States v. Cardenas, 864 F.2d 1528, 1533 (10th Cir. 1989) (finding section 922(g)(1) possession shown by demonstrating that the defendant "knowingly holds the

9

power to exercise dominion and control over [the firearm]") (quoting United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982)). Dominion, control, and knowledge may be inferred by a defendant's exclusive possession of the premises. United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). To prove Mr. Wilson's constructive possession, the government was required to show some nexus between Mr. Wilson and the firearms and ammunition. Thus, the conviction depends on whether "there [is] some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." Id.

Viewing the evidence in favor of the government, as our standard requires, we conclude that there was sufficient evidence by which a reasonable jury could conclude that Mr. Wilson knowingly possessed the firearms and ammunition. As with the constructive possession of the cocaine discussed above, the circumstantial evidence found in the house suggests that Mr. Wilson exercised sole dominion and control over the house and had constructive possession of its contents including the two SKS assault rifles and the .38 caliber ammunition. This inference is further supported by Mr. Wilson's movement towards the room with one of the rifles during the arrest, and by the location of the other rifle in the bedroom where his belongings were found. The location of the .38 caliber bullets in the house and the prior testimony of Ms. Mannie regarding Mr. Wilson's possession of a .38 caliber gun lead to a strong inference that Mr. Wilson also possessed the .38 caliber ammunition. In sum, there was sufficient evidence for the

10

jury to conclude beyond a reasonable doubt that Mr. Wilson knowingly possessed the weapons and ammunition.

## B. Hearsay Evidence

Mr. Wilson argues that Officer Easter's testimony about the March 23, 1995 "controlled buy" was inadmissible hearsay evidence. While Mr. Wilson objected to the introduction of the evidence at trial, his objections were overruled by the district court and the major part of the description allowed. Mr. Wilson claims that the district court's failure to exclude this evidence violated his Sixth Amendment right to confront the witnesses who testify against him.

We review evidentiary rulings by the district court under an abuse of discretion standard. United States v. Snow, 82 F.3d 935, 940 (10th Cir. 1996). While we review evidentiary rulings by considering the record as a whole, in the case of hearsay objections, our deference to the district court is heightened because the determination of whether certain evidence is hearsay rests heavily upon the facts of the particular case. Id. Based upon our review of the record, we find that the district court did not err in admitting the testimony of Officer Easter.

Under the Federal Rules of Evidence, hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. We have previously held that

11

testimony which is not offered to prove the truth of an out-of-court statement, but is offered instead for relevant context or background, is not considered hearsay. United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987). In Freeman, we recognized two instances where testimony describing events related to a confidential informant did not constitute hearsay evidence--both of which are relevant in this case. First, we reiterated the Supreme Court's ruling in Dutton v. Evans, 400 U.S. 74 (1970), that "the 'hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.'" 816 F.2d at 563 (quoting Dutton, 400 U.S. at 88). This exclusion applies with equal force to testimony about events which the witness visually observed. Second, we specifically held that "out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." 816 F.2d at 563. In this context, we held that the statements are offered not to prove the truth of the matter asserted, but rather to explain the preparations and steps in the investigation. Id.

Mr. Wilson directs us to the following testimony in which Officer Easter described the events surrounding the "controlled buy" made by the confidential informant on March 23, 1995:

Q:     Would you tell the jury how that particular investigation began?
A:     We received some information . . . [objection omitted]. Received some information with reference to a residence, which was 2026 North Green, that was selling drugs, also received some information of who that individual was and also made an undercover buy from that residence.

12

Q: The investigation that you did in the latter part of March 1995, what information did you receive about who was selling in that location?

A: I received information that an individual by the . . . [objection omitted].

Q: All right. Officer Easter, did your investigation focus on the person you have talked about before–Franchie D. Wilson?

A: Yes, it did.

. . .

Q: On March 23, 1995 you had an informant that you used to make a buy of crack cocaine, is that right?

A: That is correct.

Q: Tell the jury how you did that?

A: Took the informant to the intersection of 19th and Green where we dropped the informant off and parked on Green itself, 1900 block. I observed the informant walk up to the residence of 2026 North Green, where the informant made a contact with Franchie Wilson.

Q: How do you know it was Franchie Wilson that he made contact with?

A: Due to the fact that I have had contact with Franchie Wilson for six years of my law enforcement career.

. . .

Q: When you talked about using the informant on March 23rd to make a purchase of crack cocaine, why didn't you simply go up yourself and try and buy crack cocaine?

A: Due to the fact that it's been my experience that, first of all, probably wouldn't sell to me because they know me. I have worked in that area for six years. Second of all, I knew who the individual was that was selling the cocaine and he knows me very well.

Defense: I'm going to ask that that last answer be stricken.

The Court: Sustained. The jury will disregard the last statement.

Rec. vol. II, at 20-29.

After carefully reviewing Officer Easter's entire testimony, we conclude that the district court did not err in admitting his statements concerning the purpose for the investigation and the events surrounding the controlled buy. First, Officer Easter's testimony concerning information gathered from earlier confidential sources was not offered to prove the truth of the matter asserted; rather, it was offered to explain the

13

reason why the government began its investigation of 2026 North Green. See Freeman, 816 F.2d at 563-64. This information was relevant to provide background for the officer's testimony and did not unduly prejudice Mr. Wilson or confuse the issues in the case. Second, Officer Easter's testimony in which he described his observation of the interaction between the confidential informant and Mr. Wilson involved statements made by Officer Easter, not by the confidential informant. Thus, they were not statements made by someone other than the declarant. Officer Easter had personal knowledge of the event through his own observations. The government properly laid the foundation for this testimony, and we find no error in the district court's decision to admit it into evidence.

Because we conclude that there were no hearsay statements admitted, Mr. Wilson was not prohibited from confronting the witnesses against him and therefore has no basis for asserting a Sixth Amendment violation. Thus, the district court did not abuse its discretion in admitting the testimony of Officer Easter.

## C. Rule 404(b) Evidence

Mr. Wilson contends that the district court erred by admitting evidence of his prior associations with Officer Easter and Detective Fettke and his prior conviction for possession of cocaine. He contends that the court's decision was improper under Fed. R. Evid. 404(b) because the prior associations and conviction constituted inadmissible

character evidence which suggested that he had a propensity to commit the crimes for which he was indicted. The evidence was so prejudicial, claims Mr. Wilson, that the court's failure to admonish the jury to completely disregard it constituted plain error.

We review the district court's admission of evidence under Fed. R. Evid. 404(b) for an abuse of discretion. United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995), cert. denied, 117 S.Ct. 136 (1996). However, where no objection to the introduction of the evidence in question is made at trial, we review the admission only for plain error. United States v. Hill, 60 F.3d 672, 675 (10th Cir. 1995), cert. denied, 116 S.Ct. 432 (1995).

Fed. R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).

To determine if the admission of Rule 404(b) evidence was proper, we apply a four-part test which requires that: (1) the evidence was offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was

admitted.  Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  Because Mr. Wilson challenges the admission of both his prior bad acts and prior conviction, we address each claim separately.

**1. Prior Bad Acts**

Mr. Wilson argues that the district court erred in allowing Officer Easter and Detective Fettke to testify about their previous contacts with Mr. Wilson.  Officer Easter testified that he had contact with Mr. Wilson for six years as a police officer, and that he drove down a particular street a week before the search because he knew that Mr. Wilson was staying on that block and he knew that there was a felony warrant for his arrest.  Detective Fettke testified that he knew Mr. Wilson prior to the search, and that at all times in which he had dealt with Mr. Wilson in the past, he had been unemployed.  Mr. Wilson argues on appeal that this evidence was improperly admitted under Fed. R. Evid. 404(b).  Because Mr. Wilson did timely object to the admission of this evidence at trial, we review the district court's ruling for an abuse of discretion under the Huddleston four part-test.

First, the record reveals that the police officers' testimony was introduced to show that both officers knew Mr. Wilson from prior contacts and could readily identify him.  Such identification was important to demonstrate that Officer Easter could identify the man with whom the confidential informant made contact and to show that Detective Fettke knew who it was he observed in the house when executing the search warrant.

Because "identity" is one of the purposes for which evidence can be admitted under Rule 404(b), we hold that the evidence was properly admitted to show that the officers could identify Mr. Wilson.

Second, evidence regarding Mr. Wilson's identity was clearly relevant in the case. Because the theory of the case focused on constructive possession, the government had to prove that Mr. Wilson lived and sold cocaine at 2026 North Green. Officer Easter's testimony that he observed Mr. Wilson's interaction with the confidential informant tended to suggest that the defendant was the person who lived and sold, or aided and abetted in the sale of, cocaine at 2026 North Green. Furthermore, Detective Fettke's testimony regarding his observation of Mr. Wilson in the house while executing the search warrant as well as Mr. Wilson's prior report of his own employment history, enabled the government to both lay a proper foundation for the search and to further demonstrate the suspicious nature of the $359.00 and pager found on Mr. Wilson's person.

Third, the district court did not explicitly rule on the Rule 403 issue of whether the probative value of the evidence was not substantially outweighed by the potential for unfair prejudice. However, we conclude that the district court implicitly considered this issue when it ruled both at trial and at Mr. Wilson's motion in limine hearing that the evidence was admissible as relevant under Rule 404(b). See United States v. Reddeck,

17

22 F.3d 1504, 1508 (10th Cir. 1994) (trial courts have broad discretion in making rulings under Fed. R. Evid. 403).

Finally, while Mr. Wilson's counsel did request that a limiting instruction be given to the jury, the district court did not specifically instruct the jury to consider extrinsic evidence of prior acts only for identity purposes. In its jury instructions, the court instructed the jury that it should limit its consideration of evidence "of other crimes, wrongs, or acts . . . as proof of knowledge or intent." Rec. vol. I, doc. 34, Jury Instruction No. 20. However, we have held that even if the district court fails to identify the purpose for which it admits possible Rule 404(b) evidence, such error is harmless if its purpose is apparent from the record and it was properly admitted. United States v. Williams, 923 F.2d 1397, 1401 (10th Cir. 1990). Although it is preferable to give the direct instructions, we find the specific purpose for admitting the testimony concerning the prior acts is clear from the record. Therefore, we conclude that the testimony of Officer Easter and Detective Fettke regarding Mr. Wilson's prior acts satisfy the four elements of the Huddleston test for admission under Rule 404(b).

### 2. Prior Conviction

Mr. Wilson argues that the district court erred in allowing evidence regarding his prior conviction for cocaine possession. Mr. Wilson was willing to stipulate that he had a prior felony conviction in order to support the felon in possession of firearms and ammunition charges under 18 U.S.C. § 922(g)(1). Nevertheless, the district court

18

allowed the government to introduce the prior conviction to support the prior felony charge and to show "knowledge" with respect to the possession of cocaine with intent to distribute charge under 28 U.S.C. § 841(a)(1). This evidence was admitted through Officer Gores's testimony that he stopped Mr. Wilson on July 23, 1994 for a suspended driver's license and, after arresting him, found crack cocaine and marijuana on his person. The evidence also included the admission of the journal entry from Mr. Wilson's conviction. Mr. Wilson's counsel did object to the introduction of this evidence both in a motion in limine and at trial, and therefore we review the district court's admission of the prior conviction evidence for an abuse of discretion.

We first consider whether it was proper to admit evidence of Mr. Wilson's prior conviction for the purpose of proving an element of the § 922(g)(1) charges, where Mr. Wilson offered to stipulate to a prior felony. The Supreme Court's recent decision in Old Chief v. United States, 117 S.Ct. 644 (1997), which reached the same result as our decision in United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995), provides guidance on this question. In Old Chief, the Supreme Court considered whether it was proper to admit the defendant's prior conviction record for the sole purpose of allowing the prosecution to prove the "prior felony" element of a § 922(g)(1), even though the defendant offered to stipulate to a prior felony conviction. The principal issue in resolving this question, determined the Court, is "the scope of a trial judge's discretion under Rule 403, which authorizes the exclusion of relevant evidence when its 'probative

value is substantially outweighed by the danger of unfair prejudice . . . .'" Id. at 650. The Court held that because the prior conviction was relevant only to prove an element of § 922(g)(1), and because the defendant had offered to stipulate to the prior conviction, "the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available." Id. at 655.

In this case, as in Old Chief, the defendant was charged with being a felon in possession of a firearm in violation of § 922(g)(1) and offered to stipulate to the existence of the prior conviction. The defendants in both cases did not attempt to keep from the jury their prior felony records or seek to preclude the jury from deciding the prior conviction element of the underlying crime. Rather, as with the defendant in Old Chief, Mr. Wilson offered to stipulate to his prior conviction solely to limit the prejudice that would result from the jury being informed that he had previously been convicted on an unrelated charge of possession of cocaine. Because we find this case fits within the rule established in Old Chief, we hold that the district court erred in admitting Mr. Wilson's prior conviction for the purpose of supporting the prior felony element of the 18 U.S.C. 922(g)(1).

However, because in this case the government offered, and the district court permitted, evidence of the prior conviction for a second, independent purpose under Rule 404(b), we must analyze that purpose before declaring the district court abused its

discretion in admitting the prior conviction into evidence. See Old Chief, 117 S.Ct. at 655 ("[I]f, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status (ie., to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident'), Rule 404(b) guarantees the opportunity to seek its admission.") (citation omitted); Wacker, 72 F.3d at 1473 ("nothing in today's opinion should be read as limiting the prosecutor's ability to present a full picture of a prior crime when it has relevance independent of simply proving prior-felony status for section 922(g)(1)").

The second purpose for which the government offered evidence of Mr. Wilson's prior conviction was to demonstrate the "knowledge" element of the charge for possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1).[1]  Because the defense's central claim on the § 841(a)(1) charge was that the Mr. Wilson did not

---

[1]     The record indicates that the government originally sought to introduce Mr. Wilson's prior conviction to show both "knowledge" and "intent" with regard to the § 841(a)(1) charge.   In considering the defense's objection to this evidence in a motion in limine, the court restricted the use of this evidence under Rule 404(b) to demonstrating "knowledge."   While the court later instructed the jury that the evidence could be considered for "knowledge or intent," because the court admitted the evidence in the motion in limine and during trial to demonstrate knowledge and because any proper justification under Rule 404(b) is sufficient to support the admissibility of prior acts or crimes evidence, we focus our discussion on the use of the prior conviction to demonstrate Mr. Wilson's "knowledge."   See Williams, 923 F.2d at 1397 (holding that while the district court's failure to properly articulate the purpose of the evidence under Rule 404(b) is subject to harmless error analysis, if the purpose for admitting the evidence is otherwise apparent from the record and its admission is proper, the failure to do so is harmless error).

possess the cocaine outside the house, the government argues that it needed to demonstrate that he knew that there was cocaine on the premises. The district court agreed with the government and denied the defense's motion in limine to prohibit the introduction of the prior conviction evidence. At the time the evidence was offered at trial, the court instructed the jury that the evidence should be considered only for the purpose of proving the prior felony conviction and as evidence of defendant's "knowledge" of cocaine. Because the defense properly objected to the introduction of this evidence, we apply the four-part Huddleston test to determine whether the district court abused its discretion in admitting the evidence.

While the admission of evidence of prior crimes to show "knowledge" is recognized under Rule 404(b), and therefore meets Huddleston's first prong, we are not convinced that under Huddleston's second prong, Mr. Wilson's prior conviction for possession of cocaine is relevant to demonstrate that he possessed cocaine with intent to distribute. In evaluating the relevance of prior narcotics involvement in a subsequent narcotics case, we have noted that prior narcotics involvement is relevant when that conduct is "close in time, highly probative, and similar to the activity with which the defendant is charged." United States v. McKinnell, 888 F.2d 669, 676 (10th Cir. 1989) (holding testimony of former undercover officer that he had purchased cocaine from the defendant two months prior to the arrest probative of the defendant's intent to distribute cocaine). See also United States v. Conway, 73 F.3d 975, 981 (10th Cir. 1995) (holding

prior arrests for selling cocaine from motel rooms properly admitted to support charge for possession with intent to distribute cocaine from neighboring motels); United States v. Ramirez, 63 F.3d 937, 943 (10th Cir. 1995) (holding defendant's prior arrest for drug trafficking and possession of eight ounces of cocaine and $43,000 in cash probative of defendant's knowledge and intent with respect to charge for possession with intent to distribute cocaine); United States v. Record, 873 F.2d 1363, 1372-76 (10th Cir. 1989) (holding evidence of prior acts involving importation of marijuana properly admitted to support indictment for conspiring to import, and conspiring to possess with intent to distribute cocaine and marijuana).

Mr. Wilson's prior conviction was neither highly probative nor similar to the criminal activity for which he was indicted in this case. The conduct giving rise to Mr. Wilson's prior conviction occurred on July 23, 1994, when he was arrested for driving with a suspended driver's license, and a subsequent search uncovered cocaine and marijuana on his person. While the eight-month time period separating this event from his arrest on March 25, 1995 is not conclusive of relevance in this case, what is conclusive is that the underlying circumstances of these two events are so factually dissimilar that evidence of the prior conviction provides little, if any, probative value in assessing whether Mr. Wilson violated § 841(a)(1). Mr. Wilson's prior conviction arose from cocaine and marijuana found on his person after a vehicle stop, the present case involves the distribution of cocaine from a residence. Although there is a relationship

23

between a person's possession of cocaine and his or her knowledge of the substance itself, such fact taken alone does little to support an inference that Mr. Wilson either possessed, knew he possessed, or intended to distribute the cocaine found at 2026 North Green.

Under Huddleston's third prong, we find that this evidence is highly prejudicial to Mr. Wilson. The evidence of the prior conviction tends to incriminate Mr. Wilson's character and portray him as a drug user, who thus is likely to be the individual who sold cocaine at 2026 North Green. We find the circumstances of this case to be distinguishable from those in McKinnell, Conway, Ramirez, and Record. In each of those cases, the defendants' prior arrests were similar in type and method to the subsequent charges--here there is no such relationship. Given the limited probative value of the prior conviction and the substantial danger of unfair prejudice to Mr. Wilson from its introduction into evidence, we find that the limited probative value of the prior conviction is substantially outweighed by the significant prejudice to Mr. Wilson from introducing this evidence. See Huddleston, 485 U.S. at 691 (the trial court must determine under Fed. R. Evid. 403 whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice). Therefore, we conclude that the district court abused its discretion in admitting the evidence of the prior conviction.

Our conclusion that the district court abused its discretion does not end our inquiry. We next must determine whether the error was harmless under Fed. R. Crim. P. 52(a). United States v. Flanagan, 34 F.3d 949, 954-55 (10th Cir. 1994). Because the error in admitting the prior conviction evidence was not of constitutional dimension, the error is considered harmless "unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." Wacker, 72 F.3d at 1473 (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). In answering this question, we review the record de novo to determine whether the evidence of Mr. Wilson's prior conviction had a substantial influence on "the jury's verdict in the context of the entire case against him." United States v. Short, 947 F.2d 1445, 1455 (10th Cir. 1991).

The record in this case demonstrates that the government introduced substantial evidence of Mr. Wilson's guilt on each count of the indictment independent of the evidence the prior conviction. As discussed above, Officer Easter testified that he observed a confidential informant meet Mr. Wilson, enter the house at 2026 North Green with him, and return with purchased cocaine. The subsequent arrest of Mr. Wilson and search of the premises produced 3.74 grams of cocaine broken into 17-20 rocks in a Dial soap package, a glass plate with cocaine residue and Mr. Wilson's fingerprint, the original contents of the Dial soap package (which were found in the closet with the glass plate), Mr. Wilson's personal effects and clothing, two SKS assault rifles, and the .38

caliber ammunition. Detective Fettke's testimony regarding Mr. Wilson's statements while being booked into jail are also incriminating because they show Mr. Wilson's knowledge of cocaine distribution and techniques to evade law enforcement. Because of the significance of this evidence, we find that the evidence of Mr. Wilson's prior conviction did not substantially influence the outcome of the trial. Accordingly, we conclude that the district court's error in admitting evidence of Mr. Wilson's prior conviction was harmless. See United States v. Sloan, 65 F.3d 861, 865 (10th Cir. 1995) ("Where the evidence against a defendant is overwhelming, any error in mentioning a defendant's criminal record is harmless."), cert. denied, 116 S.Ct. 824 (1996).


### III. CONCLUSION


For the reasons stated above, that is, that there was sufficient evidence to convict Mr. Wilson for violating 18 U.S.C. § 922(g) and 21 U.S.C. § 841(a)(1); that Officer Easter's testimony did not constitute inadmissible hearsay; that the district court did not abuse its discretion in admitting evidence of Mr. Wilson's prior acts for identification purposes; and that while the district court did abuse its discretion in admitting evidence of Mr. Wilson's prior conviction, such error was harmless, we AFFIRM the judgment of the district court.