**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VERLE DEAN MEEKS,

    Defendant-Appellant.

No. 97-8113
(D.C. No. 96-CR-83-001)
(District of Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **CAMPBELL**, District Judge[**]

---

A jury convicted Verle Dean Meeks of violation of 18 U.S.C. § 922(g) which prohibits a person convicted of a felony from possessing a firearm. Mr. Meeks presents three issues for review. First, he contends the evidence supporting his conviction was highly prejudicial and should have been excluded

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Tena Campbell, United States District Judge for the District of Utah, sitting by designation.

under ***Old Chief v. United States***, 519 U.S. 172, 117 S. Ct. 644 (1997). Second, he maintains a substantial variance between the charges in the indictment and the government's proof prejudiced his right to notice, due process, and a fair trial. Third, he urges the evidence of possession was insufficient and the court erred in instructing the jury on constructive possession. Finding no error, we affirm.

Verle Meeks owns a ranch on the Wind River Indian Reservation in Wyoming. In the summer of 1995, he met Robin Rose, her parents, and four children, who were camping in a nearby campground. Ms. Rose's mother was related to Mr. Meeks and was visiting the area to research her family's history. For the several weeks the Rose family was in the area, invited them to his ranch to ride horses. Although the family returned to Utah at the end of the summer, Ms. Rose and the children visited Mr. Meeks that fall for a month. The following spring, Ms. Rose and her daughter, Ashley, then 7, son, Glen, age 9, and a niece, Dawn Gilbert, age 11, moved in with Mr. Meeks. In July, another niece, Jennifer Brock, Dawn's half-sister joined the family.

In the middle of the night of July 7, 1996, tribal police arrested Mr. Meeks at his home in response to allegations he sexually molested the children. On July 26, 1996, an indictment charged Mr. Meeks with five counts of abusive sexual contact with a minor and four counts of aggravated sexual abuse of a minor. Six months later, the government filed a superceding indictment adding a

tenth count, charging a violation of 18 U.S.C. § 922(g)(1), alleging Mr. Meeks possessed a firearm after he was convicted in 1974 of forcible rape.

At a pre-trial motions hearing in July 1997, Mr. Meeks' counsel moved to bifurcate the trial of count 10 from that of counts 1 through 9, arguing the circumstances of the prior conviction would be highly prejudicial. Considerable discussion was engaged in between the court and counsel, with the government's first resisting any notion of severing counts but then agreeing to the possibility of a bifurcated trial. As outlined by the court, evidence would be taken on the sexual assault counts first, the jury would deliberate, and after the verdict was rendered, trial of the firearm count would immediately follow before the same jury. During the course of discussion, defense counsel stated her principal concern was to insure that during the trial of the sex offense counts, the jury was not made aware that defendant's prior felony involved forcible rape. She noted, "it's such a harsh word and evokes so much prejudice."

The court then suggested counsel could merely stipulate to defendant's prior felony conviction without identifying the nature of the crime and avoid the necessity of the bifurcated trial. Before counsel who seemed in agreement with that suggestion could respond, however, the court stated: "I will grant [defense counsel's] motion to bifurcate or, in the alternative, if you can work out a

stipulation, I will allow you to do that and we can present the whole thing in one fell swoop."

What occurred in the interim is not clear, but trial was staged in two segments in accordance with the bifurcated arrangement. We presume, therefore, the parties were unable to reach a pretrial stipulation, given the court's prior ruling.

After four days of testimony, the jury returned a not guilty verdict on the first nine counts. As proposed, the second stage began immediately, and Mr. Meeks was found guilty later that day of violation of 18 U.S.C. § 922(g)(1). The court sentenced Mr. Meeks to twenty-one months' imprisonment.

Mr. Meeks bases his contention the court erred in permitting the government to present the circumstances of his prior conviction on *Old Chief.* That case proscribed such evidence under Rule 403 once the defendant has conceded the fact of conviction. 117 S. Ct. at 647. In this case, defendant's counsel hypothesizes the jury which had just acquitted him of nine counts of sexual contact with a child, perhaps after disbelieving the children's testimony and feeling sympathy for this otherwise weathered rancher, became angered when it discovered defendant's prior felony conviction was for forcible rape. The swiftness of the jury's second verdict, he maintains, attests to the extreme prejudice the evidence of the nature of his prior felony caused. The argument

- 4 -

rings hollow, however, in light of what actually occurred at trial. Despite all the wrangling over whether the jury should find out Mr. Meeks had been convicted of forcible rape, the damning evidence went to the jury by stipulation.

At the outset of the second phase of the trial, the government offered the testimony of the victim of the rape offense to establish the fact of conviction and to identify Mr. Meeks as the perpetrator. Defense counsel objected, and outside the presence of the jury stated: "I wanted to inform the Court that we will stipulate to the fact that he has a rape conviction. I alluded to that yesterday, but I didn't enter formal stipulation, but my client will stipulate to that, Your Honor." Although the court replied the government did not have to accept the stipulation, the prosecutor, referring to *Old Chief*, advised the court it could be an abuse of discretion for the court to proceed in that fashion. After some discussion, the court asked defense counsel, "The other stipulation is that Verle Meeks was convicted of forcible rape" to which counsel interjected, "Yes," and the court continued, "on the date alleged in this document?" Although counsel's agreement occurred before the court finished its statement, government counsel then asked her, "Stipulate the admission of written documents without [the victim's] testimony? To which she replied, "Yes."[3]

_____

[3]In his brief, defendant states the stipulation was defense counsel's "accept[ance of] the lesser of two evils." The record does not justify this statement. It is clear defense counsel's intent was to enter the stipulation from

(continued...)

Turning to the jury, the court then read to it from the stipulated documents. Among the facts read were that Mr. Meeks had been charged with the crime of rape, that the rape was committed "forcibly and against [the victim's] will," and that Mr. Meeks was convicted and sentenced to a term of five years.

In *United States v. Wilson*, 107 F.3d 774 (10th Cir. 1997), we concluded although it was *Old Chief* error to introduce evidence of the nature of a prior conviction after defendant offered to stipulate, the error was harmless because of overwhelming additional evidence assuring the "prior conviction evidence" did not substantially influence the outcome of the trial. *Id.* at 786. In *United States v. Wacker*, 72 F.3d 1453, 1472 (10th Cir. 1995), we held, pre-*Old Chief*, the district court abused its discretion in permitting the government to introduce evidence of the prior conviction after defendant offered to stipulate to the element. Again, however, the court held the error was harmless in the face of substantial evidence of guilt. We therefore proceed on the basis *Old Chief* error is subject to harmless error review and conclude any error the district court might have made with respect to defendant's *Old Chief* objection was harmless.

---

[3](...continued)
the outset. Indeed, before the court erroneously stated the government did not have to accept the stipulation, she told the court she had "alluded to that [stipulation] yesterday." She does not suggest she was pressed into accepting a distasteful compromise. To the contrary, her prior allusion suggests a calculated choice on her part. Moreover, her intent to stipulate entirely conforms to the prospect established by the court's pretrial order. To say this was the "lesser of two evils" contradicts what is plain in the record.

We reach this conclusion because defendant's stipulation allowed the seemingly objectionable facts to go to the jury. Although defendant argues the government exacerbated the prejudicial effect of the evidence by its subsequent examination of witnesses without objection and in response to defendant's prior testimony of good character, that argument is meritless because of his own judicial admission.

Defendant next contends though the government had charged him with possession of a .22 caliber rifle, it introduced an array of evidence of other firearms and ammunition of which he had no notice or opportunity to rebut. He claims this resulted in a variance between the proof and the charges. No objection was made to this evidence, and defendant recognizes this contention is also subject to harmless error analysis.

The basis of this offering is the testimony of Dawn Gilbert, Glen Rose, and Robin Rose who were asked during the first phase about all of the guns at the house and Mr. Meeks' using them to shoot coyote and other prey threatening his sheep and cattle. None of this evidence was introduced during the second phase of the trial.

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." *United States v. Edwards,* 69 F.3d 419, 432 (10th Cir. 1995). The variance is reversible error only if it affects

the substantial rights of the accused. ***United States v. Ailsworth***, 138 F.3d 843, 848 (10th Cir.), *cert. denied,* 119 S. Ct. 221 (1998).

Defendant now argues the substantial right of which he was deprived was the right to notice. But, as the government points out, he received notice on July 28, 1997, one week before trial, that the government would offer "Inextricably Intertwined Evidence." If that did not provide him ample time to prepare his defense, he made no effort to call the problem to the attention of the district court.

Defendant also suggests the government was improperly permitted to use the evidence of the presence of other weapons in his home to prove his guilt of the possession of a single firearm. However, the district court carefully instructed the jury in phase two that the defendant was not on trial for any act or conduct not specifically charged in the indictment and that the only crime of which he was charged was the possession of a specific rifle. Under these circumstances, we see no plain error.

Finally, Mr. Meeks urges the evidence to support his conviction was insufficient and the court's instruction on constructive possession was improper when all the evidence was directed to actual possession. His first point is underscored by his peroration on the inherent incredibility of the witnesses in the first phase, and the second by the fact there was no objection to the instruction.

In light of the way in which the evidence was presented in two phases, we find it difficult to follow the point defendant attempts to make about whether the jury could disbelieve the testimony about the sexual offenses and still credit the testimony of the witnesses about the defendant's possession of firearms. In phase two, the principal government witness was defendant's son who stated he left his own rifle in defendant's house and recovered it after defendant's arrest.[4] This was the rifle upon which the charge was predicated, and the son's testimony clearly placed the rifle in a home owned and occupied by the defendant.

In *United States v. Mills*, 29 F.3d 545 (10th Cir. 1994), we reversed a § 922(g) conviction, stating the government must prove defendant knowingly possessed a firearm. *Id.* at 549. We noted actual or constructive possession satisfies the statute. *Id.* A person has constructive possession when he knowingly holds ownership, dominion, or control over the object and the premises where it is found. *Id.* (citations omitted). While the government may prove constructive possession by circumstantial evidence, it may be inferred if defendant has exclusive control of the premises. In *Mills*, however, there was joint occupancy and the guns were placed in a garage separate from defendant's house. Here, there's no question defendant had exclusive possession of the house where the rifle was found. We believe the evidence was sufficient.

---

[4]Dawn, Glen, and Robin did not testify in phase two.

Arguing the impropriety of the instruction, defendant relies on ***United States v. James***, 819 F.2d 674 (6th Cir. 1987), which reversed a conviction and remanded for new trial because the only evidence involved two different stories whether defendant was holding the gun or the officers found the gun under the mattress.  Mr. Meeks characterizes this case similarly – all of the evidence either sought to establish he owned this rifle or he didn't.

Reviewing this allegation under plain error analysis, we believe it is unavailing.  Because the government's evidence established the presence of the rifle in the defendant's house at a time when he was absent, it was proper for the jury to consider whether his possession of the weapon was constructive.  The ***James*** case is simply inapposite.

**AFFIRMED**.

ENTERED FOR THE COURT


John C. Porfilio
Circuit Judge