**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 29 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WARREN DALE HOLLIS, JR.,

Defendant - Appellant.

No. 99-7009

(E.D. Oklahoma)

(D.C. No. CR-98-40-S)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Following a jury trial, Warren Dale Hollis, Jr., was convicted on three counts of manufacturing methamphetamine, possessing methamphetamine with

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

intent to distribute, and maintaining a place for the manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 856. He was also convicted on one count of possessing a firearm after a previous felony conviction in violation of 18 U.S.C. § 922(g). In this appeal, Hollis contends that the evidence was insufficient to support his conviction on all drug counts. We affirm.

## BACKGROUND

On April 14, 1998, Oklahoma police officers executed a search warrant on Hollis's home. When they knocked and announced themselves, Hollis answered the door and admitted them. R. Vol. III at 34. In Hollis's bedroom, the officers noted a shotgun beside the night stand next to Hollis's bed. Id. at 38. On top of the night stand, the officers found a small, approximately one-inch square, baggie containing methamphetamine, and they also found several similar unused, i.e., empty, baggies in the dresser drawer. Id. at 37, 47-48. Hollis admitted that the methamphetamine on the night stand was his. Id. at 64-65. Under Hollis's bed, officers discovered a sheath of papers which set out a recipe for manufacturing methamphetamine. Id. at 56-57, 104. The last step of the recipe stated, "start making money." Id. at 204. In the bedroom closet, the officers found a large bag of a white powder, which they believed to be a cutting agent for

methamphetamine.  Id. at 45-46, 85-86, 103, 206-07.  Additionally, in the living room, the officers found a jacket with Hollis's name on the label.  Id. at 100.  The jacket pocket contained a small baggie of methamphetamine.  Id. at 100, 185-86.  A search of a second bedroom which was sometimes used by friends of Hollis revealed no drugs or drug paraphernalia.  Id. at 97-99.

A search of the area surrounding Hollis's house disclosed glassware on the grounds and empty hydrogen peroxide bottles in an open outbuilding.  Id. at 58-59; 105-09; 118-22.  Additionally, officers noted a second locked outbuilding.  When they asked Hollis for a key, he directed them to a key located on the dresser in his bedroom.  Id. at 59-60.  After unlocking and entering the second outbuilding, the officers observed the following equipment and chemicals which they believed to be related to the manufacture of methamphetamine:  coffee filters holding a red-colored substance, a can with a tube sticking out, muriatic acid, acetone, Coleman fuel, hydrochloric acid, and a bottle containing a two-layer liquid.  Id. at 123, 125-33.  Tests of the substance in the coffee filters and of the two-layer liquid were positive for methamphetamine.  Id. at 188-89, 200.  A laboratory analyst testified that the two-layer liquid represented a final step in the methamphetamine manufacturing process, *i.e.*, the methamphetamine had already been formed, and only its conversion to powder remained.  Id. at 206.

Hollis presented witnesses who testified that he had been confined to his bed with flu-like symptoms for a few days preceding the search. They also testified that other persons who had been "busted" previously for operating a methamphetamine lab were present on Hollis's premises while he was sick.

**DISCUSSION**

On appeal Hollis claims only that the evidence was insufficient to support his conviction on the drug counts. Thus, he claims, the evidence regarding others' access to his premises created reasonable doubt as to his control and operation of the property. We review the record for sufficiency of the evidence de novo, determining whether, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999) (alteration in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Instead of examining the evidence piecemeal, we consider the collective inferences drawn from the evidence as a whole. See United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). We may not use this evaluation in order to second-guess the jury's credibility determinations, nor may we reassess the jury's conclusions about the weight of the evidence presented. See United States v. Yoakam, 116 F.3d 1346,

1348 (10th Cir. 1997).  Rather, if the jury's resolution of the evidence is within the bounds of reason, we must accept it.  See id.  The evidence supporting a jury's verdict must be substantial, however, raising more than a mere suspicion of guilt. See United States v. Leos-Quijada, 107 F.3d 786, 794 (10th Cir. 1997).  That is, although the jury may draw reasonable inferences from direct and circumstantial evidence, in order to be reasonable, those inferences must be more than speculation and conjecture.  See id.

A conviction for possession of methamphetamine with intent to distribute under 21 U.S.C. § 841(a) and 18 U.S.C. § 2 requires proof that a defendant (1) possessed methamphetamine; (2) knew he possessed it; and (3) intended to distribute it.  See United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). To obtain a conviction for manufacturing a controlled substance under § 841, and for maintaining a place for the manufacture under 21 U.S.C. § 856(a)(1), the government must prove that a defendant knowingly produced the controlled substance and knowingly maintained a place for that purpose.  See United States v. Wood, 57 F.3d 913, 918-19 (10th Cir. 1995).

In this case, the government presented substantial evidence of Hollis's guilt.  Hollis admitted ownership of a small baggie of methamphetamine—other identical baggies for storing street quantities of the drug were located in his dresser drawer.  A recipe for manufacturing methamphetamine, with the notation

"start making money" was located under his bed. A probable cutting agent was located on the closet shelf of his bedroom. Finally, Hollis possessed and directed the officers to a key to the lab. Even if others might also have had access to the lab, that access does not obviate the evidence which overwhelmingly links Hollis to the crimes charged. Accordingly, we conclude that the evidence permitted the jury to find, beyond a reasonable doubt, that Hollis manufactured and possessed methamphetamine with intent to distribute, and he maintained a place for the manufacture of methamphetamine.

AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge