FILED
United States Court of Appeals
Tenth Circuit

September 29, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSHUA SAMUEL RICH,

Defendant - Appellant.

No. 08-4128
(D. Utah)
(D.Ct. No. 2:07-CR-00086-DB-1)

_____

ORDER AND JUDGMENT[*]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.[**]

Joshua Samuel Rich was convicted after a jury trial of three counts of

armed bank robbery and three counts of using and carrying a firearm in relation to

a crime of violence. He was sentenced to 57 years imprisonment. He appeals

arguing the district court erred in admitting into evidence a firearm found in his

residence which was not used in any of the three bank robberies. We affirm.

---

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged, except when related to law of the case, issue preclusion or claim preclusion. Any citation to an order and judgment must be accompanied by an appropriate parenthetical notation -- (unpublished). 10th Cir. R. 32.1(A).

[**] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). We accept this case for submission on the briefs.

# I. BACKGROUND

Rich robbed the Wells Fargo Bank (the bank) in Lindon, Utah, three times. On November 10, 2006, Rich entered the bank wearing a ski mask and holding a .22 caliber pistol while Roland Thompson waited in the getaway car. On November 27, 2006, Rich and Thompson switched roles—Thompson entered the bank wearing a ski mask and carrying the same .22 caliber pistol while Rich drove the getaway car. On January 27, 2007, Rich entered the bank wearing a ski mask and carrying a .357 Rosi handgun. He drove away in a Ford Mustang to a nearby parking lot where he switched vehicles with his wife Kylee, who was waiting for him in a Honda Civic.

After the January robbery, police officers searched the Honda Civic and Rich's residence. In the vehicle, they found, *inter alia*, a loaded .357 Rosi handgun, a wallet containing Rich's identification card and a ski mask. A loaded .357 Ruger handgun and a box of .357 ammunition were found in the residence. Rich waived his rights and talked to the police twice. Both times he said a ".22 caliber pistol" or a ".22 pistol" was used in the November robberies. (R. Vol. 2, Doc. 141 at 247, 272.) Thompson was also interviewed. He said the November robberies involved a "plastic gun that shot plastic pellets." (R. Vol. 2, Doc. 141 at 263.)

Rich was indicted with three counts of armed robbery in violation of 18 U.S.C. § 2113(a) and (d) (Counts I, III and V) and three counts of using and

carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts II, IV and VI). Thompson was named in Counts I through IV and Kylee was named in Counts V and VI. Thompson pled guilty to two counts of armed robbery (Counts I and III) and one firearm count (Count IV) and Kylee pled guilty to one count of armed robbery (Count IV). Rich initially pled guilty to two firearm counts (Counts II and VI) but subsequently withdrew his plea and proceeded to trial.

Trial was held on all six counts. However, the only disputed issue concerned Counts II and IV, specifically, whether the weapon used in the November robberies was a real firearm or a facsimile. The jury found Rich guilty of all six counts and he was sentenced to 57 years in prison.[1]

## II. DISCUSSION

Rich presents a single argument—whether the district court erred in admitting into evidence the .357 Ruger found in his residence because it was unrelated to the bank robberies. He complains the admission of the unrelated handgun was irrelevant and inadmissible under Rule 402 of the Federal Rules of

---

[1] The sentencing guideline range for the armed robberies (Counts I, III and V) was 120 to 150 months. Count II required a mandatory minimum 7-year sentence under 18 U.S.C. § 924(c)(1)(A)(ii) because the firearm was brandished during the November 10 robbery. Counts IV and VI each required a mandatory minimum 25-year sentence under 18 U.S.C. § 924(c)(1)(C)(i) because they constituted a second or subsequent conviction under § 924(c). Rich sought a 57-year sentence, the mandatory minimum sentence required on the firearm counts (Counts II, IV and VI). The government recommended the same sentence and the court agreed.

Evidence. Even if relevant, its admission was highly prejudicial and should have been excluded under Rule 403 of the Federal Rules of Evidence.

The .357 Ruger (the unrelated firearm) constituted "[e]vidence of other crimes, wrongs or acts" under Rule 404(b) of the Federal Rules of Evidence. We review the admission of Rule 404(b) evidence for an abuse of discretion. *United States v. Wilson*, 107 F.3d 774, 782 (10th Cir. 1997).

Rule 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

The district court does not abuse its discretion in admitting Rule 404(b) evidence if:

(1) the evidence was offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was admitted.

*Wilson*, 107 F.3d at 782.

The sidebar conference at which the court and attorneys discussed Rich's objection to the admission of the unrelated firearm was not transcribed. Therefore, we do not know for what purpose the government sought to have the firearm admitted or upon what grounds the court admitted it. The government

-4-

acknowledges this deficiency and consequently relies on the admission being harmless.

Erroneous admission of Rule 404(b) evidence is subject to harmless error review. *Id.* at 785. An error is harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Id.* (quotations omitted). "In answering this question, we review the record de novo to determine whether the evidence . . . had a substantial influence on the jury's verdict in the context of the entire case against [the defendant]." *Id.* at 785-86.

The government says the admission of the .357 Ruger was harmless for two reasons. First, Rich did not object at trial to testimony that the .357 Ruger was found in his home but rather only to the admission of the actual firearm. Because the jury knew the officers had found the .357 Ruger in his home, its admission into evidence was harmless. Second, the only contested issue at trial was whether the weapon used during the November robberies was a real firearm. Because there was significant and credible evidence demonstrating that weapon was a real firearm, the admission of the unrelated firearm did not substantially influence the jury's verdict nor is there grave doubt as to whether it had such effect. We agree.

The government presented overwhelming evidence the weapon used in the November robberies was real. The bank personnel present during those robberies consistently described the weapon as a small, silver handgun. All said they believed the weapon was real and there was no indication it was fake. One of the

tellers who had some experience with firearms said the weapon's muzzle appeared to be a .22 caliber firearm and it had "some significant weight to it." (R. Vol. 2, Doc. 140 at 131.)

At trial, Thompson retracted his earlier statement to police that the weapon used in the November robberies was a facsimile. He testified the weapon was a .22 caliber pistol. He said he initially lied to the police to protect himself. Thompson also pled guilty to using a firearm in relation to the November 27 robbery. That charge requires the use of a real firearm and added a mandatory consecutive seven years to his sentence. Rich himself told police officers on two different occasions the weapon was a .22 caliber pistol or .22 pistol. Photographs from the bank surveillance camera were consistent with that description. Rich never said it was not a real firearm until he testified at trial. When asked to explain why he initially told officers the weapon was a .22 caliber pistol, Rich said he wanted to protect Kylee. However, Kylee was not involved in the November robberies.

There was no potential for the jury to confuse the unrelated firearm with the weapon used in the November robberies. The jury heard evidence the .22 pistol used in the November robberies was never found. It was also clear the unrelated weapon was found during the search of Rich's residence. The officer who found the unrelated firearm in the residence testified to that effect. Rich did not object to this testimony. The government never claimed the unrelated firearm

-6-

was the weapon used in the November robberies. It simply argued the use of a real firearm in the January robbery and the discovery of a real firearm in Rich's residence lent further support that the weapon used in the November robberies was also real.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge