F I L E D
United States Court of Appeals
Tenth Circuit

NOV 24 1998

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

STEPHEN G. HASLIP,

    Defendant-Appellant.

No. 97-3205

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 96-10071-01)**

---

Debra L. Barnett (Jackie N. Williams, United States Attorney, with her on the brief), Assistant United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

Roger L. Falk, Wichita, Kansas, for Defendant-Appellant.

---

Before **PORFILIO, BRORBY** and **MURPHY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

    Mr. Steven G. Haslip appeals his conviction for bank robbery, use of a firearm during the commission of that bank robbery, and possession of a firearm after a prior felony conviction. He asserts (1) there was insufficient evidence to

sustain the jury's verdict, (2) the trial court erred by admitting evidence of a prior conviction for impeachment purposes, and (3) the trial court erroneously instructed the jury. Mr. Haslip also appeals the 322-month prison sentence imposed as punishment for those crimes, claiming he is not an "armed career criminal" under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm both the conviction and sentence.

## BACKGROUND

The Fall River State Bank in Fall River, Kansas, was robbed on the morning of October 17, 1996. Two men entered the bank; one approached Alicia Ashenfelter, the teller stationed closest to the front door, and requested two rolls of dimes. The second man approached tellers Peggy Anderson and Christine Burt at the next teller window. As Ms. Ashenfelter turned to Ms. Anderson to request two rolls of dimes, she noticed the second man, later identified as Mr. Haslip, was pointing a gun at Ms. Anderson. Brandishing the gun and causing it to "click" twice, Mr. Haslip instructed Ms. Anderson to "[g]ive [him] all of the money."

Ms. Anderson put money from her station, including the bank's bait money into a white or clear plastic bag Mr. Haslip provided. Mr. Haslip then forced Ms.

Anderson and Ms. Burt toward the vault. He forced Ms. Burt to go into the vault to retrieve more money and instructed Ms. Anderson to attend to a customer who appeared in the drive-up lane. After the customer left, Mr. Haslip ordered Ms. Anderson and Ms. Burt into the vault.

In the meantime, Mr. Haslip's co-defendant, Mr. Jimmy T. Davis, instructed Ms. Ashenfelter to place all the money from her teller station into a blue plastic bag. After she had done so, he ordered her into the vault with Ms. Anderson and Ms. Burt. The two men then closed and latched the vault door so it could not be opened from the inside. While in the vault, the tellers activated the silent alarm and prepared a description of the two robbers. They were released from the vault when customers entered the bank ten to fifteen minutes later. The total loss to the Fall River State Bank, a federally insured institution, was $13,909.00. Ms. Burt, who was conducting a personal financial transaction at the time of the robbery, also lost $100.00.

Shortly after the robbery, the Wilson County Sheriff placed a roadblock at a main junction outside Fall River. Approximately one minute after establishing the roadblock, a Ford Probe crested the hill and approached the roadblock. As law enforcement officers watched, the car abruptly stopped, turned around, and

drove away from the roadblock. The Sheriff noticed two people were inside the car.

The Sheriff and his officers immediately pursued the Ford onto the property of Mr. Wayne O'Dell. After losing sight of the car for a short time, they found it abandoned in a brushy area, down the side of an embankment. The car's engine was running, the transmission was in drive, the driver's window was down, and the passenger door was open. Mr. O'Dell ultimately spotted Mr. Haslip lying along a fence row. When directed by a Kansas Highway Patrol trooper to stand up and move toward him, Mr. Haslip stated he was alone, "was just hitchhiking," and "wanted to get out of the way" when he saw the police.

Mr. Davis was arrested nearly two hours later, after a Highway Patrol trooper and K-9 unit found him hiding in trees and bushes on the O'Dell property. Law enforcement personnel continued to search the property, but found no other cars or suspects. They discovered the Ford Probe had been stolen from the driveway of Ms. Teresa Flynn, who lived in a small community outside Fall River. After getting Ms. Flynn's consent, officers searched the car and found a blue plastic bag containing a loaded Smith and Wesson Silver 9mm and a loaded Dan Wesson .357 magnum revolver. The white plastic bag contained $13,009.00,

-4-

including all the bank's bait money. The remaining $1,000.00 was never recovered.

Mr. Haslip and Mr. Davis were tried together on a superseding indictment charging each with (1) bank robbery in violation of 18 U.S.C. § 2113(a), (2) using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1), and (3) possession of a firearm after being previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

Each of the three tellers working at the bank on the day of the robbery testified at trial. Both Ms. Ashenfelter and Ms. Anderson positively identified Mr. Haslip. Ms. Burt testified she could not say if Mr. Haslip was one of the robbers or not.

Mr. Haslip testified he did not rob the Fall River Bank, or possess a gun on the day of the robbery. He claimed he was riding through Kansas with a "Ms. Parks, or Ms. Parker," when he bumped into Mr. Davis, an old friend, at a cafe in Fredonia. According to Mr. Haslip, he and Mr. Davis agreed to go look for a marijuana field outside of Fredonia, near the O'Dell property. Before Ms. Parks returned to pick him up, Mr. Haslip heard police radios and voices. He decided to

walk along the fence line of the O'Dell property close to the highway, and at one point, laid down next to the fence hoping the police would leave and he could go home. On cross-examination, Mr. Haslip admitted that although he was looking for marijuana, he had no gloves, coat, tools or packaging materials. He further stated he was not going to call "Ms. Parks" to testify on his behalf.

The jury returned a verdict of guilty as charged on both defendants. The court subsequently sentenced Mr. Haslip to 262 months imprisonment for bank robbery, 262 months imprisonment for the use of a firearm during the commission of bank robbery (each 262-month sentence to run concurrently), and 60 months imprisonment for possession of a firearm by a convicted felon (to run consecutively to the sentences imposed for counts one and two). Accordingly, Mr. Haslip's total term of confinement is 322 months.

## DISCUSSION

Sufficiency of Evidence

Mr. Haslip argues the government's evidence identifying him as one of the bank robbers was insufficient to support the jury's guilty verdict. The standard Mr. Haslip must meet to prevail on this argument is a difficult one, since we reverse on a sufficiency of the evidence claim "only if no rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wacker*, 72 F.3d 1453, 1462-63 (10th Cir. 1995). Moreover, when evaluating the record de novo, we must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. *See United States v. Wolny*, 133 F.3d 758, 760 (10th Cir. 1998). We "may neither weigh conflicting evidence nor consider the credibility of witnesses." *United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997) (internal citation omitted).

The evidence in this case includes the testimony of two bank tellers who were present when the Fall River Bank was robbed. Both described the robbery in detail and positively identified Mr. Haslip as one of the robbers. Mr. Haslip had full opportunity to cross-examine these witnesses as to the certainty of their identification. Further, Mr. Haslip does not contest he was arrested after being found lying in a field near the place where law enforcement officers found a car that had fled from a roadblock. Police retrieved the plastic bags used in the robbery, the bank's bait money, and two loaded handguns from that same car. Viewing this evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, we conclude a rational jury easily could have disregarded Mr. Haslip's explanation as to why he was lying in a field near

the getaway car, and found instead it was Mr. Haslip who robbed the Fall River

Bank in violation of 18 U.S.C. § 2113(a). Accordingly, we hold the evidence was

more than sufficient to support Mr. Haslip's robbery conviction.[1]

Admissibility of Evidence Concerning Prior Felony Conviction

Mr. Haslip next challenges the district court's decision to allow the

prosecution, on cross-examination, to introduce evidence that he was on "life

parole" in Missouri for a first degree murder conviction. Prior to trial, the court

granted Mr. Haslip's motion in limine to exclude evidence of his prior

convictions. As grounds for its pretrial ruling, the court stated the evidence was

not relevant to show identity, motive or plan under Fed. R. Evid. 404(b), and thus

the probative value was substantially outweighed by the potential for prejudice.

At the conclusion of the government's case, the parties presented a

stipulation to the jury that Mr. Haslip previously had been convicted of a felony

punishable by imprisonment of more than one year. Nevertheless, on cross-

examination, the prosecution asked Mr. Haslip about being on parole from the

---

[1] Mr. Haslip's argument focuses on the insufficiency of the government's evidence identifying him as one of the bank robbers. He does not address the sufficiency of the evidence to support his conviction on the two related firearm counts. However, on careful review of the record, we nevertheless hold the evidence was sufficient to support his conviction on those counts as well.

State of Missouri. Defense counsel objected to this questioning, claiming it was prohibited by the court's prior ruling. The court overruled defense counsel's objection, concluding evidence of Mr. Haslip's parole conditions was admissible for impeachment purposes under Fed. R. Evid. 609(a)(1) – namely, to demonstrate to the jury that Mr. Haslip was not supposed to leave Missouri without his parole officer's permission, and thus, it was unlikely he was casually traveling across Kansas with a "Ms. Parks" on the day the Fall River Bank was robbed. The court gave the jury a limiting instruction as to the use of this evidence when it ruled on defense counsel's objection (*id*. at 392-93), and again at the end of the trial.

Mr. Haslip argues that after finding the prejudice of the prior conviction substantially outweighed the probative value under Rule 404(b), the district court abused its discretion in admitting the same evidence under Rule 609, which requires that the probative value of the evidence must outweigh its prejudicial effect. He insists that because the robbery and firearm charges were entirely unrelated to the crime for which he was on parole, the prejudicial effect of any evidence of his prior conviction far outweighed any probative value it may have concerning his credibility. He further argues the prejudicial effect of such evidence was enhanced because he relied to his detriment on the court's pretrial ruling disallowing such evidence when he decided to take the witness stand.

We review the district court's evidentiary ruling for an abuse of discretion. *United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir. 1994), *cert. denied*, 514 U.S. 1088 (1995). This court has long permitted the government to impeach the testimony of a criminal defendant who takes the witness stand in the same manner as any other witness, including reference to prior convictions. *United States v. Smith*, 521 F.2d 374, 376 (10th Cir. 1975); *see also Burrows v. United States*, 371 F.2d 434, 435 (10th Cir. 1967) ("When a defendant in a criminal action takes the stand, he takes with him his character and reputation. He is supported by more than his own testimony, for the law presumes that his reputation is good with respect to all elements involved in the crime with which he is charged. For this reason it has always been considered proper in cross-examination to interrogate him as to all collateral matters which would clearly tend to disprove the legal presumption with which he is clothed." (Internal citation omitted.)). Mr. Haslip has offered no persuasive authority, and we have found none, that suggests a pre-trial 404(b) ruling precludes or restricts this practice, or otherwise forecloses analysis in a later-presented Rule 609 question.

In fact, the only case we located on point holds that a ruling disallowing evidence under Rule 404(b) is irrelevant to a subsequent ruling under Rule 609. *United States v. Valencia*, 61 F.3d 616, 618-19 (8th Cir. 1995). In *Valencia*, the

Eighth Circuit began with the premise that evidentiary rulings must be treated independently, and then went on to discuss the fact that Rule 404(b) and Rule 609 address two very different situations:

> [E]vidence offered under Rule 404(b) is substantive evidence against the accused, *i.e.*, it is part of the government's case offered to prove his guilt beyond a reasonable doubt.  Rule 609 evidence on the other hand has to do with the accused's ability to tell the truth when testifying on his or her own behalf.  While both rules speak of "probative value" and "prejudice," it is critical to note that evidence offered under the respective rules is probative as to different matters.  The probative character of evidence under Rule 609 has to do with credibility of a witness, while 404(b) "probativeness" essentially goes to the question of whether or not the accused committed the crime charged.

*Id*. at 619.  We fully agree, and thus decline to limit the district court's discretion to weigh "probative value" and "prejudice" under Rule 609, independent of any prior ruling under Rule 404(b).


Finally, we note that at oral argument defense counsel conceded that if the jury followed the court's instruction limiting consideration of prior conviction evidence to credibility determinations, Mr. Haslip is "hard pressed" to identify any prejudice from the admission of evidence pertaining to his parole status in Missouri. "A central assumption of our jurisprudence is that juries follow the instructions they receive." *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998).  We therefore presume the jury followed the limiting instructions the court

gave and considered evidence regarding Mr. Haslip's parole status in Missouri only for the purpose of evaluating the credibility of his testimony. Given this presumption, the circumscribed nature of the prosecutor's questions, and the *Valencia* rationale adopted herein, we hold the district court did not abuse its discretion by allowing the limited introduction of evidence pertaining to Mr. Haslip's prior conviction.

Jury Instructions

Mr. Haslip contends the trial court erred by failing to give several jury instructions he proposed. He claims the failure to give such instructions in his proposed form "may have misled the jury and confused the issues, and in turn prejudiced [him]." We review a district court's decision whether to give a particular jury instruction for abuse of discretion. We conduct a de novo review to determine whether, as a whole, the instructions themselves correctly stated the applicable law. *See United States v. Swallow*, 109 F.3d 656, 658 (10th Cir. 1997). We reverse only if we have a substantial doubt the jury instructions properly guided the jury in its deliberations *and* we find prejudice. *United States v. Voss*, 82 F.3d 1521, 1529 (10th Cir.), *cert. denied*, 117 S. Ct. 226 (1996). Mr. Haslip fails to meet this standard.

First, Mr. Haslip claims the trial court should have given a separate instruction cautioning jurors that the testimony of law enforcement officials and other government employees should not be given any greater weight and their credibility is subject to impeachment. We agree with the trial court that these issues were adequately covered by the general instructions pertaining to witness credibility and impeachment. Mr. Haslip is not entitled to have his specific instruction given so long as the substance of the proposed instruction was contained in the charge given to the jury. *See Wolny*, 133 F.3d at 766.

Second, Mr. Haslip claims he was entitled to an instruction that combined the presumption of innocence afforded a criminal defendant with the government's burden of proving guilt beyond a reasonable doubt. He contends the trial court erred by bifurcating these two issues into separate instructions. This claim is frivolous. Mr. Haslip utterly fails to show how the two relevant instructions were erroneous or inadequate, or how he was prejudiced by the instructions given, particularly since the jurors were instructed they were not to "single out one instruction alone as stating the law, but must consider the instructions as a whole."

Third, Mr. Haslip claims he was prejudiced because the trial court refused

an instruction to the effect a defendant cannot be "found guilty merely by the fact that he associated himself with someone else who the jury finds guilty of criminal conduct." He makes a similar argument concerning the trial court's refusal to instruct the jury that the Defendant's mere presence at the scene of a crime does not indicate the Defendant's guilt. The trial court concluded these issues were adequately covered by the "aiding and abetting" instruction. We agree. Moreover, notwithstanding Mr. Haslip's conclusory statement the "aiding and abetting" instruction is "misleading and confusing," he failed to show how he was in any way prejudiced by the instruction given.

Fourth, Mr. Haslip claims it is necessary in a joint trial to instruct the jury to the effect the conduct and statements of one defendant cannot be considered in regard to the other defendant. He argues if such an instruction is not given, the jury "possibly" is misled into improperly attributing one defendant's conduct to the other. The trial court correctly determined that Mr. Haslip's proposed instruction was unnecessary. The instructions as a whole made clear the jury could not attribute the statements or conduct of one defendant to the other defendant. Mr. Haslip's concern the jury is "possibly" misled absent his proposed instruction is pure conjecture and fails to demonstrate prejudice.

Fifth, Mr. Haslip challenges the trial court's refusal to instruct the jury that possession of a firearm is a lawful activity. The trial court properly concluded such an instruction would confuse the jury given the fact Mr. Haslip was charged with the unlawful possession of a firearm by a felon. The evidence presented at trial in no way supported Mr. Haslip's proposed instruction. His argument to the contrary is frivolous.

Mr. Haslip next complains the trial court gave an instruction on eyewitness testimony that was substantially different from his proposed instructions and thus, failed to draw adequate attention to his theory of the case. Here again, Mr. Haslip was not entitled to a separate instruction on the theory of the defense so long as the instruction given contained the substance of the proposed instruction. *Wolny*, 133 F.3d at 766. On review, we conclude the court's instruction regarding eyewitness testimony accurately stated the law and did not differ substantively from Mr. Haslip's proposed instruction. Accordingly, the trial court did not abuse its discretion by refusing Mr. Haslip's proposed instruction.

Finally, Mr. Haslip claims he was prejudiced by the trial court's refusal to instruct the jury that an exemplar of his fingerprint may be placed into evidence and used to compare to fingerprints which are in dispute. He claims this was an

appropriate instruction because of discussion in the record concerning the fact there was no fingerprint evidence implicating him. The trial court appropriately concluded there was no issue before the jury concerning fingerprint identification. Indeed, Special Agent Robert Beckham testified that none of the fingerprint evidence collected was consistent with the known fingerprints of either defendant. Mr. Haslip's proposed instruction would only have caused confusion in light of this evidence.

In sum, the jury instructions, read as a whole, accurately stated the governing law and gave the jury ample understanding of the issues and applicable standards. Mr. Haslip's arguments to the contrary must fail.

Sentencing as an "Armed Career Criminal"

As a result of being sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), Mr. Haslip's sentence was more than doubled from a maximum of 147 months to 322 months. He challenges the district court's application of that Act, claiming his 1969 burglary conviction does not meet the definition of a "violent felony." Relying on *United States v. Barney*, 955 F.2d 635 (10th Cir. 1992), Mr. Haslip asks us to delve beneath the face of the information and complaint charging him with burglary, to conclude the government failed to prove

by a preponderance of the evidence that the facts of his particular conviction fall within the definition of burglary as a "violent felony" set forth in *Taylor v. United States*, 495 U.S. 575, 599 (1990).

We review issues regarding the interpretation and application of the Armed Career Criminal Act de novo. *United States v. Romero*, 122 F.3d 1334, 1340 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1310 (1998). Mr. Haslip is correct the government must support the propriety of a § 924(e) enhancement by a preponderance of the evidence. However, it is well-established we use a "formal categorical approach" when determining whether a prior conviction constitutes a "violent felony" under the Armed Career Criminal Act. We can look "'only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" *Romero*, 122 F.3d at 1341 (quoting *Taylor*, 495 U.S. at 600). Applying *Taylor*, we uphold a § 924(e) sentence enhancement based on a prior burglary conviction if either (1) the statutory definition of burglary substantially corresponds to "generic" burglary, or (2) the charging paper and jury instructions actually required the jury to find all the elements of generic burglary prior to convicting the defendant. 495 U.S. at 602; *see also Barney*, 955 F.2d at 639.

Applying this test to the present facts, we conclude the Missouri statute, by including places other than buildings (*i.e.*, tent, boat, railroad car, vessel), defines burglary more broadly than does *Taylor*. *See United States v. Phelps*, 17 F.3d 1334, 1341 (10th Cir.) (pre-1975 Missouri burglary statute defined burglary in broader terms than *Taylor*), *cert. denied*, 513 U.S. 844 (1994). Under these circumstances, *Taylor* requires that we proceed to consider whether the charging paper and jury instructions nevertheless actually required the jury to find all the elements of generic burglary prior to convicting Mr. Haslip. Where, as here, the defendant enters a guilty plea, thus providing no occasion to instruct a jury, we have held it is appropriate for the sentencing court to "look to the underlying indictment or information and the text of the guilty plea to determine whether the defendant was charged with and admitted conduct which falls without question within the ambit of *Taylor's* generic definition." *Barney*, 955 F.2d at 639-40.

The wrinkle in this case is the unfortunate fact many of the records pertaining to Mr. Haslip's 1969 burglary conviction and guilty plea were destroyed by fire. Among the court documents destroyed were the actual judgment of conviction and, presumably, any plea colloquy. However, the available records contain, among other things, an authenticated copy of the complaint charging Mr. Haslip with breaking and entering a building (the

-18-

Trucker's Inn) with intent to steal, and a journal entry of judgment showing Mr.

Haslip pleaded guilty to the burglary of a building.[2]  These documents are

distinguishable from those we determined would not support an enhancement in

*Barney.*  The two convictions that could not be counted toward enhancement in

*Barney* were based on informations which themselves were unclear as to whether

the defendant's entry into the building was unlawful or unprivileged, or rather, his

entry into a back room, which is neither a building nor a structure, was unlawful.

955 F.2d at 640-41.  Here, Mr. Haslip was clearly charged with "unlawfully ...

break[ing] and enter[ing] a certain building, to wit:  Trucker's Inn ... with the

felonious and burglarious intent to steal."  Mr. Haslip's reliance on *Barney*

therefore is misplaced.

Under these circumstances, we are confident Mr. Haslip's 1969 burglary

conviction actually represented conduct within the *Taylor* definition of burglary;

we cannot and will not look at the facts underlying Mr. Haslip's particular

conviction as he proposes.  Accordingly, we hold the district court did not err in

relying on the available documents pertaining to Mr. Haslip's guilty plea and

judgment to conclude the 1969 offense was indeed a "violent felony" under the

---

[2]  We note these documents were not included in the record on appeal; however, Mr. Haslip does not challenge the district court's characterization of the relevant documents.

Armed Career Criminal Act.

For all the foregoing reasons, we **AFFIRM** Mr. Haslip's conviction and sentence.