Michael J. CHRISTOPHERSON,
Petitioner–Appellant,

v.

Bobby BOONE, Warden of the Dick
Conner Correctional Center,
Respondent–Appellee.

No. 01–5025.

United States Court of Appeals,
Tenth Circuit.

Oct. 21, 2002.

Robert W. Jackson, Jackson & Presson, Steven Michael Presson, Jackson & Presson, P.C., Norman, OK, for Petitioner–Appellant.

Patrick T. Crawley, Asst., Attorney Gen., Oklahoma City, OK, for Respondent–Appellee.

Before SEYMOUR and KELLY, Circuit Judges, and WINDER *, District Judge.

## ORDER AND JUDGMENT**

WINDER, District Judge.

Michael J. Christopherson appeals the district court's denial of his federal petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Upon a thorough review of the record and the arguments presented, we affirm.

### BACKGROUND

This case concerns the murder of David Bruce Peterson. On March 9, 1993, Appellant Michael J. Christopherson and Tony Ray Zickefoose encountered Peterson at the Scenic Overlook, a well-known meeting place for homosexuals. Christo-

---

* The Honorable David K. Winder, Senior District Judge, United States District Court for the District of Utah, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of

the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pherson and Zickefoose had been riding in Christopherson's car, drinking beer, and Zickefoose asked Christopherson to pull up to the Scenic Overlook so he could urinate. While there, Peterson approached Zickefoose and asked him if he "wanted to party or whatever." Zickefoose indicated that he and Christopherson had some whiskey and asked Peterson if he wanted to buy some beer. Peterson indicated he would. After Peterson purchased the beer, the three men rode around drinking and went with Peterson in Peterson's car to a remote area of southern Osage County where Zickefoose murdered Peterson by hitting him twice in the head with a rock.

Peterson was reported missing on March 12, 1993. The following day, Peterson's car was found abandoned at a rural site between Tulsa and Sand Springs, Oklahoma. On March 26, 1993, a rancher discovered Peterson's body in a wooded area in rural Osage County, Oklahoma. Peterson's wallet was found discarded beside the roadway some distance from the location of the murder. Evidence demonstrated that someone had driven Peterson's car from the scene of the killing and had driven the car through a fence, damaging the front of the vehicle.

In May of 1993, Zickefoose was arrested in Creek County, Oklahoma on an unrelated charge of armed robbery. On May 19, 1993, while awaiting trial on that charge in the Creek County Jail, Zickefoose confessed to the murder of Peterson. Zickefoose made an unsworn statement to law enforcement officers, which implicated Christopherson in a plan to rob Peterson. In his May 1993 confession, Zickefoose said that he and Christopherson had gone to the Scenic Overlook to find a homosexual "to roll." Zickefoose indicated that he and Christopherson tempted Peterson with the implication of sex, "playing it off like we was homosexuals." Zickefoose told law enforcement officers that he and Christopherson took Peterson into the tree line, tied his hands with a belt, and Zickefoose took his billfold. Peterson then allegedly threatened he would "call the law," which prompted Zickefoose to strike Peterson in the head with a whiskey bottle, and then kill him with a rock. When asked specifically what Christopherson had to say before Zickefoose hit Peterson with the rock, Zickefoose said Christopherson told him "Yes, do it. Yes, do it."

Twenty months later, on January 30, 1995, Zickefoose entered a plea of guilty to first degree murder and was sentenced to life imprisonment without the possibility of parole. At that hearing, Zickefoose gave a less detailed and somewhat different account of Peterson's murder which did not implicate Christopherson. In January 1995, Zickefoose said that he was drunk and high at the time of the incident and wanted more dope. Zickefoose testified: "[Peterson] offered me money to perform oral sex on him and I said okay and got a bottle of whiskey and started drinking it and I drove around and I just I decided I'd just take his money instead. I hit him with the whiskey bottle. I figured it would knock him out but it did not do nothing.... So I tied his hands behind his back and when he started hollering I hit him in the head with a rock ... twice.... Then I waited for the guy that was with me to get back with the car and I got in the car and took off."

Prior to Christopherson's trial, Zickefoose informed the prosecutor that if called to testify regarding Peterson's murder, he would testify in accord with his January 1995 account rather than the version he initially relayed in May of 1993.

At Christopherson's trial, Zickefoose testified as a hostile witness for the state and, as indicated, he testified in accord

with his January 1995 statement. Specifically, he testified that Peterson was "wanting to do this, do this thing, and I just decided that I'd take his money from him." Zickefoose said, "I knew he was a homosexual, and I just figured I'd get him to buy some beer and I did think about maybe cheating him out of some money..... I started thinking maybe, you know, maybe if he had 25 dollars, I could get enough for a shot of dope too." Zickefoose testified that there was no discussion or plan between Zickefoose and Christopherson to rob Peterson. He said that Christopherson was not present when he hit Peterson with the whiskey bottle, nor was Christopherson present when he hit Peterson with the rock. He testified that Christopherson was in Peterson's car, probably turning the car around.

The state then sought to impeach Zickefoose with his May 1993 unsworn statement to law enforcement officials which implicated Christopherson. In closing argument, the prosecutor reminded the jury of Zickefoose's prior inconsistent statement and called attention to the differences between the May 1993 confession and Zickefoose's trial testimony. Thereafter, the trial court instructed the jury that this evidence was admitted for the limited purpose of impeaching Zickefoose's credibility.[1]

In addition to the testimony of Zickefoose, Tina Sexton, a friend of Zickefoose, also testified at Christopherson's trial. She testified that Christopherson and Zickefoose were at her home during the days preceding, the day of, and the day after the murder. She testified that on the day of the murder, she returned home to find a yellow Cadillac parked in her garage and Zickefoose and Christopherson in her home. She observed that Christopherson acted nervous and Zickefoose was babbling that he had "killed someone." She said that Christopherson was "pacing the floor" and saying "he needed to go get his car" at the Scenic Overlook. Sexton was informed that the yellow Cadillac parked in her garage belonged to the victim. Later that afternoon, Sexton drove Christopherson to the Scenic Overlook to retrieve his car. She testified that while driving with Christopherson he described the events surrounding the murder as follows:

Q. [Mr. Henry] Tell us what conversation you had with this defendant?

A. [Sexton] He was trying to tell me what happened and he was telling me that he had run over a couple of fences and he seen a sign that it was in Osage County.

Q. What was in Osage County?

A. The victim, where they left that guy. He said he left him tied up and that it—they was just going to rob this fella and he started hollering that he was going to throw them in jail and he told me that [Zickefoose] hit him over the head with a bottle and then he hit him over the head with a rock and then he expressed deep remorse over it. He said that he would never forget the way that guy sounded when he died.

---

1. Jury instruction No. 44 provided:

Evidence has been presented that on some prior occasion Tony Zickefoose made a statement inconsistent with his testimony in this case. This evidence is called impeachment evidence and is offered to show that the witness's testimony is not believable or truthful. If you find that a statement was made, you may consider this impeachment evidence in determining what weight and credit you give the testimony of that witness. You may not consider this impeachment evidence as proof of innocence or guilt. You may consider this impeachment evidence only to the extent that you determine it affects the believability of the witness, if at all.

But he was going to go back and check, is what he told me. I don't know whether he did nor not, but it did take him a while to get back to the house.

* * * *

[Christopherson] was telling me what had happened as they did this. They were going to lure this guy out and act like they were going to have sex with him because he was a fag. Okay. They were just going to rob him. They didn't—wasn't going to hurt him. And they had this guy tied up and they got his wallet and [Zickefoose] had his wallet and he had only 4 dollars. Well, that made [Zickefoose] mad so he hit him over the head with a whiskey bottle. Okay. Well he apparently fatally injured him so he went ahead and hit him over the head with a rock. This is Christopherson telling me this. Okay. He was watching. And so after that happened, he told me they left and he ran over some fences. Mike Christopherson ran over some fences. He was driving. Is that clear enough?

(Tr. II at 353–54.)

The jury convicted Christopherson of first degree felony murder and unauthorized use of a motor vehicle. He was sentenced to life imprisonment for the murder conviction and twenty years imprisonment for the unauthorized use conviction.

Mr. Christopherson appealed both convictions to the Oklahoma Court of Criminal Appeals (OCCA), raising the following 8 claims: (1) the state presented insufficient evidence to sustain convictions for the crimes of first degree murder and unauthorized use of a motor vehicle; (2) the state's improper use of impeachment evidence as substantive evidence of guilt denied Mr. Christopherson a fair and im-

partial trial; (3) an evidentiary harpoon commenting on Mr. Christopherson's silence constituted reversible error; (4) prosecutorial misconduct in the examination of Zickefoose constituted reversible error and denied a fair trial; (5) the trial court's instructions concerning the testimony of accomplices were reversible error; (6) admission of a photograph of the victim in life was reversible error; (7) Mr. Christopherson was denied effective assistance of counsel; and (8) accumulation of prejudicial errors denied Mr. Christopherson a fair and impartial trial. On February 6, 1997, the OCCA affirmed Christopherson's convictions. He did not seek post-conviction relief in the state courts.

Christopherson filed a federal petition for a writ of habeas corpus on November 26, 1997, alleging the same eight propositions of error adjudicated by the OCCA on direct appeal. The district court denied the petition in its entirety, and Christopherson appealed. This court granted a certificate of appealability on the sole issue of whether the prosecution improperly used impeachment evidence as substantive evidence of guilt, depriving Christopherson of a fundamentally fair trial.

## DISCUSSION

Christopherson claims that the prosecution repeatedly sought to focus the jury's attention on Zickefoose's May 1993 statement throughout the trial, urging the jury to view the impeachment evidence as substantive evidence of guilt. Similarly, Christopherson claims that although the trial court provided a limiting instruction, the prosecutor's comments about Zickefoose's prior inconsistent statement negated that instruction. Our review of this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AED-

PA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Walker v. Gibson,* 228 F.3d 1217, 1225 (10th Cir.2000) (quoting 28 U.S.C. § 2254(d)(1), (2)), *cert. denied,* 533 U.S. 933, 121 S.Ct. 2560, 150 L.Ed.2d 725 (2001).

After a thorough review of the record on appeal, the court finds Christopherson's claim that the state improperly used impeachment evidence as substantive evidence of guilt without merit. Similarly, the court finds nothing in the record to suggest that the prosecutor's comments regarding Zickefoose's prior inconsistent statement negated the trial court's limiting instruction to the jury.

At the outset, the court finds it significant that the prosecutor had legitimate reasons for calling Zickefoose as a witness and, contrary to Christopherson's claim, not simply for the sole purpose of impeachment. Zickefoose had information that Christopherson was with him on the night in question; that they traveled together to the Scenic Overlook where they met Peterson; that they traveled with Peterson in Peterson's car to a remote location in rural Osage County where Peterson was murdered; and that Christopherson drove Peterson's vehicle following the incident. Having legitimately called Zickefoose as a witness, the state was entitled to impeach him when he testified in a manner that was inconsistent with his May 1993 confession to Creek County officials. Although the prosecutor in closing argument called attention to the prior inconsistent statement as well as the substance of that statement, the prosecutor did not invite or urge the jury to consider the statement as substantive evidence of guilt.

Moreover, at the close of the trial, the trial court provided a thorough yet easy-to-understand limiting instruction to the jury. This instruction explicitly provided: "You may not consider this impeachment evidence as proof of innocence or guilt. You may consider this impeachment evidence only to the extent that you determine it affects the believability of the witness, if at all." Christopherson's argument assumes that the jury could not follow the district court's limiting instruction that the evidence could be properly considered only on the issue of impeachment. We, however, assume the contrary. *See United States v. Cardall,* 885 F.2d 656, 667 (10th Cir.1989). "A central assumption of our jurisprudence is that juries follow the instructions they receive." *United States v. Castillo,* 140 F.3d 874, 884 (10th Cir.1998); *see Cardall,* 885 F.2d at 667 ([t]he assumption that juries can and will follow the instructions they are given is fundamental to our system of justice") (citation omitted); *see also United States v. Haslip,* 160 F.3d 649, 654 (10th Cir.1998) (holding that evidence that defendant was on "life parole" and was prohibited from leaving state without parole officer's permission was admissible to impeach defendant's testimony that he was casually traveling across adjacent state on date of bank robbery in adjacent state, notwithstanding court's earlier ruling prohibiting use of that evidence under character evidence rule, in view of court's limiting instruction restricting use of evidence to evaluation of defendant's credibility), *cert. denied,* 526 U.S. 1044, 119 S.Ct. 1346, 143 L.Ed.2d 509 (1999). Accordingly, we presume the jury followed the trial court's limiting instruction and that the jury considered evidence regarding Zickefoose's

initial confession only for the purpose of evaluating the credibility of his testimony.

The presumption that the jury followed the limiting instruction is not rebutted simply because the jury ultimately concluded Christopherson was, in some way, involved in the robbery of Peterson. Although Christopherson's involvement in the robbery was the substance of the impeachment evidence, there was considerable evidence on this issue independent of any testimony by Zickefoose.[2]

For the reasons set forth herein, the Court finds that Christopherson has failed to demonstrate that the OCCA's adjudication of his claim—that his trial was rendered fundamentally unfair by the use of impeachment evidence as substantive evidence of guilt—was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d). The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

---

**2.** As set forth earlier, Christopherson raised the claim that the state presented insufficient evidence to sustain his conviction in both his appeal before the Oklahoma Court of Criminal Appeals and in his petition to the United States District Court for the Northern District of Oklahoma. Both the OCCA and the district court considered and rejected this claim. Because the certificate of appealability in this case was specifically limited to the issue of whether the state improperly used impeachment evidence as substantive evidence of guilt, we decline to conduct a review of the sufficiency of the evidence.