**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

QUINCY J. CONWAY,

      Defendant - Appellant.

No. 01-3315
(D.C. No. 01-10014-01-MLB)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **PORFILIO**, and **LUCERO**, Circuit Judges.

---

A jury convicted Defendant Quincy Conway of Possession of More Than Five

Grams of Cocaine Base in violation of 18 U.S.C. § 844. Following the verdict, the

United States District Court for the District of Kansas sentenced Defendant to 110 months

imprisonment and three years supervised release, and assessed a fine of $1,000 plus costs.

Defendant timely appealed his conviction, contending the police conducted a warrantless,

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

pretextual stop of his automobile in violation of the Fourth Amendment protection against unreasonable searches and seizures. Further, based on the Fifth Amendment right to a fair trial, Defendant claims the district court erred in permitting prosecutorial cross-examination about his prior federal cocaine convictions and positive controlled substances test, and the trial judge interacted with defense counsel in an inappropriate and prejudicial manner.

December 4, 2000, at approximately 3:45 p.m., in Wichita, Kansas, Wichita police officers Craig Janssen and Eric Carpenter were patrolling a residential neighborhood in a marked police car. The officers had received complaints about a crack house in the area, outside of which there had been several drug arrests.

The officers observed Defendant leaving the suspected crack house, get into a green Oldsmobile, and drive south on Battin Street. Defendant turned right westbound on Elm, then turned right at the intersection of Elm and Glendale. Deciding to surveille the vehicle, the police proceeded west on Pine, stopping at the intersection of Pine and Glendale. Defendant continued to drive northwest on Pine and came to a stop at the stop sign at the intersection of Pine and Murdock. The officers pulled behind him at that intersection.

After stopping at the stop sign, Defendant then made a 45 degree right turn northbound on Oliver without using his turn signal. Just north of the intersection, the officers stopped the vehicle for a traffic violation.

Defendant was the driver and sole occupant of the vehicle. Officer Janssen requested Defendant's driver's license. Through the partially open driver's side window, the officer observed what he believed to be a plastic baggy of crack cocaine in Defendant's shirt pocket. Because he "did not want to alarm him that [he] was onto him," Officer Janssen returned to his vehicle to discuss with Officer Carpenter how best to take Defendant into custody and to run a check for outstanding warrants.

While waiting for the warrant information (which ultimately showed none outstanding), Officer Janssen saw Defendant move his hands around and lean right. Believing Defendant might be attempting to conceal the cocaine baggy, Officer Janssen returned to Defendant's car, asked him to step out of the vehicle, and told him about the cocaine he believed he had seen in his shirt pocket. Defendant denied having any cocaine in his possession. Officer Janssen then patted him down but found no cocaine. Officer Carpenter placed him under arrest and Officer Janssen searched Defendant's vehicle, discovering a bag of crack inside a stocking cap on the passenger seat by the console.

Defendant was charged in a one count indictment with possession with intent to distribute approximately six grams of crack cocaine. He filed a motion to quash his arrest and to suppress evidence seized and statements made. The court held an evidentiary hearing on the motion to suppress and heard argument on the Government's notice of intent to offer Defendant's prior convictions at trial. In a written memorandum and order dated June 11, 2001, the court "had no trouble concluding that the initial stop of the

defendant's car" and subsequent seizure of crack cocaine were lawful. Regarding evidence of prior convictions, the court stated, "the government will not be permitted to introduce defendant's prior convictions in its case-in-chief," but noted its ruling did not "prohibit introduction of defendant's federal conviction for impeachment purposes should defendant chose to testify at trial." Defendant was charged in a superceding indictment with Possession of More Than Five Grams of Cocaine Base, in violation of 21 U.S.C. § 844, and convicted by a jury following a two-day trial on June 28, 2001.

## I. Fourth Amendment Claim

We review de novo a district court's ultimate determination of Fourth Amendment reasonableness. **United States v. Flynn**, 309 F.3d 736, 738 (10th Cir. 2002). In reviewing a denial of a suppression motion, we consider the totality of the circumstances and view the evidence in the light most favorable to the court's finding, which we accept unless clearly erroneous. **United States v. Gay**, 240 F.3d 1222, 1226 (10th Cir. 2001).

Defendant argues the police officers' stop of his vehicle was not based on a reasonable suspicion that a traffic violation of K.S.A. § 8-1548 had occurred, but, instead, the officers made a pretextual stop in order to search his car after he left what they believed was a drug house. Defendant concedes that if the traffic stop was lawful, Officer Janssen's observations of the cocaine in his shirt pocket justified the subsequent search of the vehicle.

- 4 -

We consider traffic stops analogous to investigative detention rather than to custodial arrest, and therefore apply the dual inquiry espoused in *Terry v. Ohio*, 392 U.S. 1, 20 (1968). First, we ask "whether the officer's action was justified at its inception," and, second, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (*citing Terry*, 392 U.S. at 20). A traffic stop is reasonable at its inception if the officer has either probable cause to believe a traffic violation has occurred, or a "reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc) (internal quotations omitted).

The district court held the traffic stop lawful based on K.S.A. § 8-1548, "Turning movements and required signals," which provides in relevant part:

> (a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.
> (b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

Citing *Hunnicutt,* 135 F.3d at 1348, the court noted "[i]t is irrelevant that the officers may have had subjective motives for stopping the car." Further, it found:

> There is no question that defendant was required to turn his car in order to proceed from the stop sign at Pine into the northbound lanes of Oliver. If

- 5 -

defendant had not turned, he would have crossed all four lanes of Oliver and ended up in the yard of the residence located on he [sic] southeast corner of the intersection of Oliver and Murdock.

*State v. DeMarco*, 952 P.2d 1276 (Kan. 1998), supports the district court's interpretation of K.S.A. § 8-1548. In *DeMarco*, a Kansas Highway Patrol trooper, sitting in his car on the shoulder of a highway, observed in his rear-view mirror the defendant's vehicle making an unsignaled lane change. Although it held the subsequent detention unreasonable, the *DeMarco* court found a K.S.A. § 8-1548 violation:

> K.S.A. 8-1548 requires a lane change signal within 100 feet of the point where the vehicle makes the lane change, *regardless of whether there is any traffic moving in front of or behind the vehicle* . . . . The driver of a vehicle parked on the shoulder is entitled to a lane change signal to safely time reentry onto the roadway.

*Id.* at 1281. (emphasis added).

Defendant's argument that K.S.A § 8-1548(a) and *DeMarco* require a signal only if a turn cannot be made with reasonable safety is unavailing. First, the use of the word "nor" in K.S.A. § 8-1548, "nor" a conjunctive defined as "and not" – reading "[n]o person shall turn a vehicle . . . unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal" – plainly requires a turn to be made *both* with reasonable safety *and* with a signal. The cross-references in the statute provide for no exceptions or qualifications. Second, Defendant misconstrues the scope of *DeMarco*. Viewing the facts before it, the *DeMarco* court observed that the highway patrol car parked on the shoulder was "entitled" to a lane signal. *DeMarco*, 952 P.2d at

- 6 -

1281.  It did not discuss whether a signal would be required to turn from one street onto another; moreover, its holding (a signal is required "regardless of whether there is any traffic moving in front of or behind the vehicle") bolsters the district court's conclusion. *Id.*  Finally, the "2001 Pocket Part Case Annotations Note 4" for K.S.A. § 8-1548, although cited neither by the parties nor by the district court, supports the Government's reading of *DeMarco*: "[l]ane change signal must be made regardless of whether there is any traffic in front or behind the vehicle" (*citing DeMarco*, 952 P.2d at 1276).

Defendant also characterizes the traffic stop as improper because police failed to stop him after his unsignaled turn from Glendale onto Pine, indicating "law enforcement officers do not know how or when the statute is violated," and that they interpreted K.S.A. § 8-1548 in an "arbitrary and capricious" manner.  But officers' decision to stop Defendant at a later rather than earlier turn falls far outside the realm of "arbitrary and capricious."  First, Defendant offered no evidence demonstrating the officers saw him turn from Glendale onto Pine.  Second, he did not establish the intersections were identical.  Thus, Defendant's argument evinces his repeated failure to signal rather than police ignorance of statutory requirements.

## II.  Evidence of Prior Convictions and Narcotics Test

We review a district court's rulings on evidentiary matters and motions in limine for abuse of discretion.  ***Davoll v. Webb***, 194 F.3d 1116, 1136 (10th Cir. 1999).  "In order to reverse a district court judgment because of an erroneous evidentiary ruling, [appellant]

must make a clear showing she suffered prejudice, and the ruling was inconsistent with substantial justice or affected her substantial rights." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 (10th Cir. 1999) (internal quotations omitted).

In denying Defendant's motion in limine to suppress evidence of his prior state and federal cocaine convictions (the federal convictions for possession of nine grams of crack cocaine and six grams of powdered cocaine arose from a single 1993 arrest) the district court held:

> Although this court does not agree with the Tenth Circuit's rationale [in *United States v. Wilson*, 107 F.3d 774 (10th Cir. 1997)], it is bound to follow it. Accordingly, the government will not be permitted to introduce defendant's prior convictions in its case-in-chief. This ruling does not prohibit introduction of defendant's federal conviction for impeachment purposes should defendant chose to testify at trial . . .
>
> [n.1] Introduction in the government's case-in-chief of evidence of defendant's prior conviction(s), even with a limiting instruction, would raise serious Fed. R. Evid. 403 concerns.

Defendant argues the district court improperly allowed prosecutorial cross-examination regarding his prior federal cocaine convictions and imprisonment, current status of probation or parole with the district court (an issue cursorily mentioned but not developed in Defendant's brief or at oral argument), and positive test for use of controlled substances exactly one month prior to the arrest in this case.

Fed. R. Evid. 609(a), the basis for the district court's admission of the challenged cross-examination, provides:

(a) General rule.  For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

The language and case law of Rule 609(a) belie Defendant's assertion that the district court abused its discretion in permitting cross-examination regarding his prior cocaine convictions and imprisonment.  In its pretrial order, the court performed the required probative value versus prejudice analysis, allowing the prior conviction evidence only for impeachment purposes, not on the prosecution's direct case.  We have "long permitted the government to impeach the testimony of a criminal defendant who takes the witness stand in the same manner as any other witness, including reference to prior convictions."  *United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998).  The district court did not abuse its discretion by authorizing the Government to use the prior convictions to rebut Defendant's testimony that he had no knowledge of the crack cocaine in his car.

Pointing to Rule 609(a)(2), Defendant suggests only prior convictions involving dishonesty or false statement are permissible.  This assertion erroneously reads Rule

609(a)(2) as an additional or limiting requirement to Rule 609(a)(1), when in fact, the subsections plainly are cast as independently permissible – prior convictions for crimes punishable by over one year imprisonment or death are admissible if the court determines the probative value outweighs prejudice, *and* prior crimes of dishonesty and false statement, regardless of punishment, are also admissible.

Defendant further urges the district court's pre-trial ruling on the probative versus prejudicial value of the prior convictions precluded their later admission at trial, even for impeachment purposes. However, the court only stated that introduction of Defendant's prior convictions in the *case-in-chief* would raise "serious Fed. R. Evid. 403 concerns," and explicitly anticipated such evidence might come in for impeachment purposes. Moreover, in ***Haslip***, we rejected the notion that a pre-trial Fed. R. Evid. 404(b) ruling forecloses or restricts analysis in a Rule 609 question subsequently raised at trial. 160 F.3d at 654.

Finally, Defendant directs our focus to ***United States v. Wilson***, 107 F.3d 774 (10th Cir. 1997), cited by the district court in its pre-trial ruling disallowing introduction of the prior convictions in the government's case-in-chief. In ***Wilson***, although we ultimately found the error harmless, we held the district court mistakenly admitted Mr. Wilson's prior convictions because their prejudice outweighed probative value. But, in contrast to the instant case, Mr. Wilson did not testify; therefore, the admissibility of his convictions for impeachment purposes was never at issue.

Stronger than Defendant's argument regarding his prior federal convictions is his assertion that the district court erred in allowing cross-examination about the urinalysis results. Provided the probative value outweighs prejudice, evidence of a prior felony conviction is specifically sanctioned by the Federal Rules of Evidence; narcotics tests, by contrast, are not. Further, while a positive urinalysis might address whether the defendant knew the white powdery substance in his car was cocaine base, it is irrelevant to the central issue on cross-examination, namely whether Defendant knew there was a stocking cap filled with his crack in his car.

Nevertheless, we need not decide whether the district court abused its discretion in allowing testimony about urinalysis because any error committed was harmless. Such an error would not be of constitutional dimension, therefore, we consider the error harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Wilson*, 107 F.3d at 785 (internal quotations omitted). To answer this question, we review the record de novo to determine whether cross-examination regarding Defendant's urinalysis results "had a substantial influence on the jury's verdict in the context of the entire case against him." *Id.* at 786 (internal quotations omitted).

The Government asked only a single question – "exactly one month before your arrest, your urine was tested and tested positive for the presence of controlled substances. Isn't that true?" – which Defendant answered in the affirmative. Significant additional

evidence, notably the officers' testimony, the stocking cap with 6.18 grams of crack, and prior federal cocaine convictions, lead us to conclude the admission of cross-examination regarding the urinalysis did not have a "substantial influence" on the jury's verdict.

### III. Judicial Bias and Misconduct

We review a district court's denial of a motion for mistrial for abuse of discretion. *United States v. Begay*, 144 F.3d 1336, 1339 (10th Cir. 1998). Examining the trial and entire record as a whole, we grant a mistrial if the error deprived the defendant of a fair trial. *Id.* at 1340.

With respect to remarks Defendant did not specifically object to at trial, we consider whether, when viewed together, the remarks constituted plain error. *United States v. Fabiano*, 169 F.3d 1299, 1302 (10th Cir. 1999). Plain error is (1) an error that is (2) clear or obvious and (3) affects substantial rights, i.e., it actually prejudiced the defendant. *Johnson v. United States*, 520 U.S. 461, 467 (1997). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

Defendant contends he was denied the right to a fair trial guaranteed by the Due Process Clause of the Fifth Amendment because the trial judge verbally harassed his attorney. He claims the judge allowed the prosecutor to cast ethical aspersions on defense counsel, implied to the jury that defense counsel was trying to mislead them, and unduly

castigated the attorney before the jury. Defendant urges that upon his motion for mistrial, the "district judge should have *sua sponte* disqualified himself, and his denial of the motion for mistrial constituted an abuse of judicial discretion."

The trial judge on several occasions indicated his rising impatience and annoyance with defense counsel; for instance, the judge referred to him as "young man" (he actually was 40 years old) and told him "you'd better thicken up your skin a little bit." But, however unpleasant, occasional judicial shortness with an attorney, even in the presence of the jury, does not warrant a new trial. In **United States v. Pearson**, 203 F.3d 1243, 1277 (10th Cir. 2002), *cert. denied*, 530 U.S. 1268 (2000) (*quoting* **Liteky v. United States**, 510 U.S. 540, 555-56 (1994)), we stated:

> judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

The exchange Defendant cites indicates impatience, perhaps even rudeness and exasperation, but falls far short of revealing "a high degree of favoritism or antagonism [so] as to make fair judgment impossible." **Id.**; *see also* **Petersen v. United States**, 268 F.2d 87, 88 (10th Cir. 1959).

For the reasons stated above, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge