**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARIO MONCAYO,

      Defendant-Appellant.

No. 10-2149
(D.C. No. 1:09-CR-01044-JEC-1)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **TYMKOVICH,** Circuit Judge, and **FREUDENTHAL,** District Judge[**]

Defendant Mario Moncayo appeals his convictions for possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm after sustaining a felony conviction, in violation of 18 U.S.C. §§

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Nancy D. Freudenthal, Chief United States District Judge for the District of Wyoming, sitting by designation.

922(g)(1) and 924(a)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291. At trial, the district court admitted evidence of a prior drug trafficking offense that was minimally relevant to the prosecution's case and highly prejudicial to the defendant. Because we conclude that this error was not harmless, we reverse and remand for new trial.

I.

On December 17, 2008, Clovis, New Mexico police officers executed a search warrant at a trailer home located at 905 Delta Street. Officers found Moncayo, his then-wife, Nicole Ramirez, and a man named Edwin Chavez inside the trailer home. The officers found money and 133.4 net grams of cocaine base inside socks hidden under a mattress in a back bedroom. Moncayo was arrested. Officers also found several firearms, a scanner, scales, and prescriptions and papers with Moncayo's name on them inside the trailer.[1] Moncayo had previously been convicted of a felony offense.

The grand jury returned a three-count indictment charging Moncayo with violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After four continuances at Moncayo's request, the case proceeded to trial. The major disputed issue at trial was whether

_____

[1] A handgun magazine was also seized during this search and it was later found to have Moncayo's fingerprint on it – this is the "2008 gun evidence" later referenced in this order.

2

Moncayo lived at 905 Delta, where the police arrested him and found the evidence. Moncayo's defense was that he did not live at 905 Delta, and instead lived at 905 <u>Beta</u> Street.[2] The government's first witness was George Archibeque, the owner of the trailer at 905 Delta. Archibeque testified that Moncayo rented the trailer from February through December of 2008. ROA, Vol. 3 at 81. The government's second witness was Wesley Hadley, a probation and parole officer with the New Mexico Corrections Department. Hadley testified that, in February 2008, Moncayo asked permission to move from 905 Beta to 905 Delta. <u>Id.</u> at 97. Hadley also testified that he visited Moncayo at 905 Delta in April 2008, and that he found Moncayo at home at that time. <u>Id.</u> at 97-98. The government then called several of the Clovis Police Department officers who took part in the search of the 905 Delta residence on December 17, 2008. The officers testified that they found Moncayo near the rear bedroom when they entered the trailer. The officers testified that they found several documents with Moncayo's name on them in the trailer, including an adoption receipt from an animal shelter, court documents, and a Western Union receipt. Some of the documents had the 905 Delta address. Others had the 905 Beta address or a 3205 Gidding Street address. Officers also found prescriptions with Moncayo's name on them in the bathroom.

---

[2] The identity of house numbers appears to be a coincidence.

Moncayo's first witness was Christina Snell, an employee of a bail bonds and private investigations office in Clovis. Snell testified that she knew Moncayo because she had posted bail for him. Snell testified that, during 2007 and 2008, her records indicated Moncayo's residential address was 905 Beta Street and his mailing address was 8502 Gidding Street.[3] Id. at 289. Snell testified that she checked on Moncayo occasionally, including in December 2008, and often found him at 905 Beta. Moncayo's second witness was Laura Lopez, Moncayo's niece. Lopez testified that, in December 2008, she lived at 905 Beta with her daughter and Moncayo. Id. at 302. Moncayo's final witness was Nicole Ramirez, who was married to but separated from Moncayo in December 2008. Ramirez testified that Moncayo lived at 905 Beta in December 2008. Ramirez testified that her cousin Phyllis Maez and a man named Jose Soto lived at 905 Delta, and that Maez and Soto allowed Moncayo to keep his dogs there. She also testified that she went with Moncayo to 905 Delta to feed his dogs on December 17, 2008, the day Moncayo was arrested. Ramirez testified that she and Moncayo went inside the trailer because Maez had asked them to check to see if the pipes had frozen. Id. at 312. She testified that prescriptions and papers found in the trailer that had her or Moncayo's names on them "might have came with some of the stuff that [she]

_____

[3] There was conflicting testimony about the street number of the Gidding Street residence. It is unclear from the record whether the 3205 and 8502 addresses are meant to refer to the same residence.

had." Id. at 315.

The government sought to introduce evidence of a 2007 incident in which police observed Moncayo drop a bag of cocaine into a vehicle's engine block. The bag contained smaller baggies of cocaine. The government also sought to introduce evidence of a handgun magazine that was found during the execution of the search warrant on December 17, 2008. "[I]t revealed a fingerprint for Mr. Moncayo." ROA, Vol. 3 at 227.

Prior to any introduction of the 2007 incident or the 2008 gun evidence, the parties and the district court discussed, at a bench conference, the admissibility of the evidence under Federal Rule of Evidence 404(b). The government argued that the 2007 drug evidence was relevant to Moncayo's intent to distribute because the bag found in the engine block contained cocaine divided into small baggies. See id. at 229. It argued that the 2008 gun evidence was "relevant to knowledge and intent . . . [o]f the presence of the gun [and] the control of the gun." Id. at 230. Moncayo's counsel objected, arguing the government had not established that the prior 2007 incident was relevant, and that the evidence regarding both the 2007 incident and the 2008 gun evidence was unduly prejudicial

One of the judge's law clerks was involved in this exchange. She stated to the court that she "would have trouble identifying" the government's specific legitimate purpose under Federal Rule of Evidence 404(b) in admitting the evidence. Id. at 231. She also advised the judge that "there was a recent reversal,

5

and we had to retry a case because the 404(b) evidence came out without the specificity that the circuit requires." Id. In response, the government repeated its earlier contention that the evidence regarding the drugs found in the engine block in 2007 was "admissible to show an intent to distribute." Id. at 231. Moncayo's counsel then asked that the court require the government to make a factual showing as to how the 2007 incident established intent to distribute in this case. He argued that Moncayo's "character and prior bad acts [were] being introduced for the sole purpose of attempting to convince the jury that he acted in conformance with prior bad acts." Id. at 232.

At this point, the judge asked the law clerk for her opinion. The law clerk replied, "it's a really close call. I haven't looked at the briefing on it in a while, but are these specified in the record? Did you articulate the specificity in the briefing?" Id. After more argument from the parties, the following discussion and ruling occurred:

THE COURT: I don't think I will allow it. Proceed without that.

MR. ANDERSON [for the United States]: Both?

THE COURT: No. What was the first one?

LAW CLERK: The cocaine.

THE COURT: The cocaine is all right. What do you think?

LAW CLERK: Do you want to go off the record and talk?

THE COURT: No. Just tell me.

6

LAW CLERK: I think it's very close.

THE COURT: If it's that close, I'd rather --

LAW CLERK: I think it's super prejudicial, and that's the problem.

THE COURT: I think if we're gong to make a mistake, I would rather make a mistake against the government than I would the defendant, so I'm not going to allow it.

MR. ANDERSON: In either?

THE COURT: In either.  No, the first one is all right, the cocaine.

LAW CLERK: The cocaine?

THE COURT: Yes.  That's all right.  Okay?

MR. ANDERSON: Thank you, Your Honor.

MR. KLIPSTINE [for Moncayo]: The incident the Court is going to allow is the one currently on appeal, where there hasn't been a factual determination of whether my client is guilty of that?[4]

THE COURT: That is on appeal.

MR. KLIPSTINE: Judge, what we'll end up doing in this case is basically retrying a different charge.

LAW CLERK: The danger is that a jury would just simply say, "Okay, he did it before, he must have done it this time."  And that's what the rule is designed to prevent.  There are legitimate purposes, and intent to distribute would be a legitimate purpose, if you find that the probative value is outweighed by the danger of the prejudice.  That's the call.  Because it would show his knowledge and intent.

---

[4] Moncayo's first trial on the 2007 state trafficking charge resulted in a hung jury.  The second trial resulted in a conviction, and Moncayo's appeal from that conviction was pending when this discussion took place.

THE COURT: Right.

LAW CLERK: On the amount that was distributable.

THE COURT: All right. You can go into the cocaine in the engine, throwing the coke in the engine, but that's it.

MR. ANDERSON: Not the gun?

THE COURT: Not the gun.

Id. at 234-35.

The government presented evidence of Moncayo's prior 2007 trafficking offense through the testimony of Brian Encinias, a Clovis Police Department officer. On July 27, 2007, Encinias executed a search warrant at 512 West Street in Clovis. As Encinias approached the residence, he saw Moncayo standing next to a car with its hood up. Encinias observed Moncayo reach under the hood and drop an object into the engine block. Id. at 238. The object was a clear plastic baggie with several different baggies inside. The small baggies contained cocaine. Encinias testified that this manner of packaging was commonly used for ease of sale in the drug trade. He stated, "Everything is divided into different weights for sale and then put into one baggie to keep them all together." Id. at 239. At the conclusion of Encinias's testimony, the district court gave the jury the following instruction:

> You have heard evidence of an act engaged in by the defendant on July 27, 2007. You may consider this evidence only as it bears on the defendant's knowledge, intent, preparation, plan, and absence of mistake or accident, and for no other purpose. Of course, the fact

8

that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

Id. at 241.

Immediately after the court gave the limiting instruction, Moncayo moved for a mistrial. Id. at 241. He argued that Encinias's testimony "[did] not establish nor did it show in any way the requirements with specificity that the government is required to show using this type of evidence concerning" his character. Id. at 241-42. The court denied the motion.

The government also introduced photographs taken at the 905 Beta Street residence. Several of the photographs were of court documents containing Moncayo's name. One of the documents related to Moncayo's conviction on the July 2007 drug offense. Redacted copies of the photographs, which did not contain descriptions of the offenses to which they related, see ROA, Vol. 1 at 68-71, were introduced over Moncayo's objection at trial. ROA, Vol. 3 at 129.

The jury found Moncayo guilty on all three counts. The district court sentenced Moncayo to a total term of imprisonment of 270 months.

## II.

Moncayo argues that the district court erred by permitting evidence, over his objections, that Officer Encinias saw Moncayo drop a bag containing cocaine into an engine block in 2007. Moncayo contends that Encinias's testimony was of minimal relevance to the case and created the danger that the jury would consider

9

the evidence as relevant to Moncayo's criminal propensity. Moncayo also argues that the court erred in admitting a photograph of a court document relating to Moncayo's arrest in 2007 for substantially the same reasons. The government counters that the evidence was relevant to show Moncayo's intent.

This court reviews a district court's decision to admit evidence pursuant to Federal Rule of Evidence 404(b) for an abuse of discretion. United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997). Even if the district court abused its discretion, this court will "not disturb a jury verdict based on a Rule 404(b) error if it was harmless." United States v. Caldwell, 589 F.3d 1323, 1334 (10th Cir. 2009).

Under this rule, the government may introduce evidence of a defendant's prior bad acts only "if it is relevant to something material other than criminal propensity." United States v. Shepherd, 739 F.2d 510, 512 (10th Cir. 1984). Rule 404(b) governs the admissibility of such evidence, providing that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). Our analysis of a district court's admission of evidence under this rule is guided by the Supreme Court's ruling in Huddleston v. United States, 485 U.S. 681 (1988). See United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000) ("To determine whether Rule 404(b) evidence was properly

10

admitted we look to the four-part test set out by the Supreme Court in Huddleston v. United States.").  Huddleston requires that: "(1) the evidence was offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was admitted." Wilson, 107 F.3d at 782.  "Rule 404(b) admissibility is a permissive standard and 'if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403.'" United States v. Davis, 636 F.3d 1281, 1298 (10th Cir. 2011) (quoting United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009)).

III.

The first Huddleston condition, that the evidence was offered for a proper purpose, is satisfied here.  "Evidence is admitted for a proper purpose if it is allowed for one or more of the enumerated purposes in Rule 404(b)." United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006).  Intent is one of the listed purposes.  See Fed. R. Evid. 404(b).  Evidence of past crimes is admissible to establish intent to distribute in a drug trafficking offense.  See United States v. Cherry, 433 F.3d 698, 701 (10th Cir. 2005).  The government contended at trial

11

that Officer Encinias's testimony about the 2007 incident would show that Moncayo had intent to distribute in this case. We conclude that the evidence was admitted for a proper purpose.

The second condition is that the evidence must have been relevant. This circuit has held that "the government bears the burden of demonstrating how the proffered evidence is relevant to an issue in the case." United States v. Hogue, 827 F.2d 660, 662 (10th Cir. 1987). Prior acts may be probative of intent as long as the uncharged acts are similar to the charged crime and sufficiently close in time." United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000).

The government contends that the evidence relating to the 2007 incident is relevant because it involved "substantial factual similarity" in that "[b]oth incidents involved distributable quantities of essentially the same drug." Aplee. Br. at 21. The government also argues that the 2007 incident was close enough in time to the charged conduct in the present case to be probative of Moncayo's intent to distribute cocaine.

The factual differences between the prior 2007 incident and the 2008 charges at issue undermine the government's argument that the 2007 incident was relevant to establish Moncayo's intent to distribute. From the trial testimony, it is not clear whether the cocaine found at 905 Delta Street was packaged in several smaller baggies inside of a larger bag—as in the 2007 incident—or if it was packaged in several bags of varying content and volume. In fact, the government

12

presented little evidence regrading how the cocaine was packaged in this case.

Several Clovis police officers testified that they found socks under the mattress in

the bedroom. They testified that some of the socks contained currency and coins,

and some of the socks contained cocaine. However, the officers did not describe

in detail how the cocaine was packaged inside of the socks. See, e.g., ROA, Vol.

3 at 123 (testimony that "[s]ome of the socks contained cash currency, and some

of the others contained a substance that, through our training and experience, we

believed to be cocaine"). Officer Timothy Marshall gave the most specific

testimony regarding packaging.[5] He stated, "There were several socks with

change. I believe one sock actually had dollar bill currency. And there were also

located baggies of a white rock-like substance and other individual baggies of a

crystal-like substance." Id. at 171-72. Raymond Bly, a DEA agent, testified that

the items found in the trailer, including scales, a scanner, firearms, and the

quantity of cocaine base, were consistent with distribution. However, Bly was

not questioned regarding the manner in which the cocaine was packaged and,

notably, did not testify that the cocaine was packaged for distribution in this case.

Because there is little evidence of how the cocaine was packaged in the instant

---

[5] The government also introduced photographs of the socks and their contents. E.g., ROA, Vol. 3 at 137-38 (introduction of the government's exhibits 18-J and 18-L). However, the photographs are not included in the record on appeal. Thus, this court cannot determine whether the jury was shown exactly how the cocaine was packaged in this case and what any such packaging looked like.

13

incident, we conclude that the government failed to establish sufficient factual

similarities between the 2007 incident and the one in this case. Cf. Wilson, 107

F.3d at 785 (determining that the district court erred by admitting evidence of a

prior drug possession incident where "the underlying circumstances of these two

events are so factually dissimilar that evidence of the prior conviction provides

little, if any, probative value in assessing whether" the defendant violated the law

in the case before the court). In the absence of similarity regarding packaging or

other attendant circumstances, the evidence of the prior incident is minimally

relevant on the issue of intent to distribute. The second condition from

Huddleston was not met.[6]

The third condition is that the probative value of the evidence was not

outweighed by the potential for unfair prejudice. The district court did not make

findings on this issue. "Although explicit findings are clearly preferable," United

States v. Lazcano-Villalobos, 175 F.3d 838, 847 (10th Cir. 1999), the failure to

make such findings is not error per se. See Wilson, 107 F.3d at 783 (determining

that the district court "implicitly considered" the issue of probative value and

unfair prejudice when it ruled that the evidence was admissible). However, when

the district court has not made explicit findings, this court may conduct its own de

---

[6] The second relevance inquiry, temporal proximity, does not weigh in favor or against the relevance of the prior incident. The 2007 incident occurred 16 months before the arrest in this case. This is neither too remote nor particularly recent.

14

novo balancing of probative value and prejudice. Lazcano-Villalobos, 175 F.3d at 847 (discussing this court's "authority to conduct a de novo balancing where the trial court failed to make explicit findings to support a Rule 403 ruling").

We conclude that the probative value of Officer Encinias's testimony was substantially outweighed by the potential for unfair prejudice and confusion of the issues. The evidence had only a modicum of probative value because it was offered to prove an essential element of the case that Moncayo did not dispute. Moncayo did not dispute the government's evidence that the amount of cocaine found in the trailer was a distributable quantity, or that tools of the drug trade were found in the trailer. Rather, Moncayo's defense was that he did not live at the address where the drugs were found and the drugs, firearms, and other items found there were not his. Even so, the evidence was not irrelevant for purposes of Rule 401 because the government still had the burden to show Moncayo's intent. See United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006) ("[Rule 404(b) evidence] is relevant if it tends to prove or disprove one of the elements necessary to the charged offense.").

While the evidence meets the minimal relevance threshold of Rule 401, its probative value is significantly diminished by the fact that Encinias's testimony was relevant only to an undisputed element of the case. This minimal relevance is easily outweighed by the danger of unfair prejudice inherent in producing evidence of Moncayo's prior bad acts relating to distributable quantities of

15

cocaine. The evidence was highly prejudicial because it tended to incriminate Moncayo's character and portray him has a drug dealer, who thus was likely to be the one responsible for the cocaine, firearms, and other incriminating evidence found at 905 Delta. Wilson, 107 F.3d at 785; see also Shepherd, 739 F.2d at 513 (noting that "[e]vidence of prior criminal acts is almost always prejudicial to the defendant" and concluding that "evidence of other crimes was prejudicial and fraught with the possibility of diverting the jury's attention from the crucial issue"). We conclude that the evidence was of a kind that "tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999) (quoting United States v. Roberts, 88 F.3d 872, 880 (10th Cir. 1996)). Thus, the third condition from Huddleston was not met.

Fourth, the district court must issue an appropriate limiting instruction, if requested. At the outset, we note that while Moncayo moved for a mistrial after Encinias's testimony, he did not specifically object to the district court's limiting instruction. Still, we conclude that the court's limiting instruction was so broad that it would not have been apparent to the jury that they were only to consider Encinias's testimony for a specific purpose.

A limiting instruction must "adequately advise the jury of the limited purposes for which the evidence was admitted." United States v. Hardwell, 80

16

F.3d 1471, 1491 (10th Cir. 2006). In Hardwell, this court held that a limiting instruction was too broad where the Rule 404(b) evidence "was admitted only to prove intent and knowledge to commit the charged conspiracy . . . but the instructions permitted the jury to consider the evidence as proof of identity, plan, preparation, and motive, none of which were in issue." Id. The district court's instruction in this case was similar to the one in Hardwell. Although the government introduced Moncayo's prior offense solely to show intent, the instruction permitted the jury to consider the evidence "as it bears on the defendant's knowledge, intent, preparation, plan, and absence of mistake or accident, and for no other purpose." ROA, Vol. 3 at 241.

A district court's failure to instruct the jury regarding the specific purpose for which Rule 404(b) evidence is admitted "is harmless if its purpose is apparent from the record and it was properly admitted." Wilson, 107 F.3d at 783. In this case, we conclude that the error was not harmless because the purpose for which the evidence was admitted likely was not apparent to the jury. Because intent to distribute was not a disputed issue at trial, it would not have been clear to the jury that it was to consider Moncayo's prior act only to the extent that it was relevant to establish intent to distribute the drugs which were found at 905 Delta.

After considering the four conditions for admission of evidence under Rule 404(b), we conclude that the district court abused its discretion in admitting

Officer Encinias's testimony about the 2007 incident.[7]

*Harmless Error*

This court will not overturn a conviction obtained through erroneous admission of Rule 404(b) evidence if such error was harmless. The harmless error doctrine derives from Federal Rule of Criminal Procedure 52(a), which states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." When a defendant objects to a district court's admission of evidence under the Federal Rules of Evidence, we apply the "nonconstitutional harmless error standard." See United States v. Jefferson, 925 F.2d 1242, 1255 (10th Cir. 1991). Under this standard, we look to see if the error either had a "substantial influence" on the outcome at trial or leaves us in "'grave doubt' as to whether it had such effect." Id. (quoting United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990)). In making this assessment, we review the

_____

[7] Moncayo also argues that the district court erred by permitting the government to introduce a photograph of a court document relating to the 2007 offense. In order to show that Moncayo lived at 905 Delta Street, the government introduced photographs of various documents with Moncayo's name on them that were found in the trailer at that address. Moncayo's argument fails because the government introduced only redacted copies of photographs. The redacted photographs do not indicate the nature of any offense to which they relate, nor do they even indicate that Moncayo was convicted of anything. To the extent that they could suggest that Moncayo engaged in some unidentified bad act, the photographs were not unfairly prejudicial. At the beginning of trial, the parties stipulated that Moncayo had previously been convicted of a felony. The redacted photographs did not further prejudice Moncayo because they showed only that Moncayo had some prior correspondence with the courts. The district court did not abuse its discretion by admitting the redacted photographs.

18

entire record <u>de novo</u>, "examining the context, timing, and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence." <u>United States v. Blechman</u>, No. 10-3034, 2011 WL 4060250, at \*11 (10th Cir. Sept. 14, 2011) (quoting <u>United States v. Hanzlicek</u>, 187 F.3d 1228, 1237 (10th Cir. 1999)). "When the evidence against a defendant is overwhelming, an erroneous admission of prior convictions is harmless—especially when the trial court issues a proper limiting instruction." <u>United States v. Caldwell</u>, 589 F.3d 1323, 1334 (10th Cir. 2009). The government bears the burden of showing that the nonconstitutional error is harmless. <u>Blechman</u>, 2011 WL 4060250, at \*11.

The government contends that any error was harmless because "[t]he fundamental question before the jury was whether Moncayo was living at 905 Delta Street in December 2008." Aplee. Br. at 24. Thus, because Officer Encinias's testimony did not bear on that "fundamental question," it could not have affected the jury's ultimate decision. Further, the government argues that "the prompt limiting instruction" vitiated any harm.

It is true that a key issue at trial was whether Moncayo lived at 905 Delta or some other residence. The government put on substantial evidence that Moncayo did in fact live at 905 Delta in December 2008. Moncayo also put on credible evidence that he did not live at that address. While the government's evidence on the issue of Moncayo's residence was substantial, its significance paled in comparison to the later-admitted evidence that Moncayo had been

19

previously arrested with a distributable quantity of cocaine. The erroneously admitted evidence likely tipped the scale in favor of the government in light of the conflicting testimony concerning Moncayo's residence.

It is the government's burden to show harmless error. It has not met that burden. Moreover, even when this court conducts a <u>de novo</u> review of all of the evidence against Moncayo, we conclude that the erroneous admission of the 2007 incident was not harmless. There is a high likelihood that the jury considered the testimony regarding the 2007 incident to be evidence of Moncayo's criminal propensity and not of his intent to distribute, which played little to no role in the prosecution's case. Moreover, the overbroad limiting instruction did nothing to focus the jury's attention on the specific legitimate purpose of intent to distribute. Without a proper limiting instruction, we think it likely that Officer Encinias's testimony substantially affected the jury's verdict. The prejudicial effect of the erroneously admitted evidence so overshadowed the conflicting testimony about Moncayo's actual residence that its admission could not have been harmless.

*Continuance and Subpoena Issues*

Moncayo also contended that the district court erred by not granting a continuance when a subpoenaed witness failed to appear and by not compelling the appearance of the subpoenaed witness by issuing a bench warrant. Because we conclude that a new trial is warranted on Rule 404(b) grounds, we need not decide this additional issue.

IV.

The judgment of the district court is REVERSED, and the case is REMANDED for new trial.

Entered for the Court


Mary Beck Briscoe
Chief Judge